## EDWIN SHULTZ v. FREDERICK WALL.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 11, 1890—Decided April 21, 1890.
[To be reported.]

1. An innkeeper is bound to pay for goods stolen in his house from a guest, unless stolen by the guest's servant or companion; and he is not absolved from this liability, in any case, by the fact that no negligence upon his part has operated to bring the theft about or to render it possible: Houser v. Tully, 62 Pa. 92; Walsh v. Porterfield, 87 Pa. 376.
2. But the conduct of the guest, contributing to his loss, whether voluntary or negligent, is always a defence; and his failure to deposit valuables in a safe place provided for the purpose by the landlord, after express notice so to do, and his neglect to make use of sufficient fastenings provided for the security of the room from which they were stolen, are evidence of contributory negligence.
3. The provisions of the act of May 7, 1855, P. L. 479, in regard to the places where notice that a place for the deposit of valuables has been provided in a hotel shall be posted, may be said to be mandatory, in the sense that, as they provide for constructive notice, they must be complied with strictly, if constructive notice be relied on; but, if actual notice be shown, these provisions become immaterial.
4. Jurors are not bound to believe an incredible story because no witness contradicts it; wherefore, if the circumstances, surrounding a theft in a hotel, indicate that it could not have occurred if the guest had fastened the door of his room, the question of contributory negligence is for the jury, notwithstanding the guest's testimony that he did fasten the door is uncontradicted.

### Statement of Facts.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOL-
LUM and MITCHELL, JJ.

No. 175 July Term 1889, Sup. Ct.; court below, No. 112
August Term 1888, C. P.

On August 3, 1888, Edwin Shultz brought trespass against
Frederick Wall, to recover a sum of money alleged to have
been stolen from the plaintiff, while a guest in the hotel of the
defendant. The defendant's plea was not guilty.

At the trial on February 20, 1889, the following facts were
shown: The defendant was the regularly licensed keeper of
a hotel at Phœnixville. The plaintiff, who was the driver of
a beer wagon, in the habit of coming to Phœnixville about
once a week to deliver beer and other drinks and collect money
for his employer, M. G. Erb, arrived at the defendant's hotel
on the evening of July 2, 1888, with his wagon and team, put
his team in the hotel stable, and remained at the hotel as a
guest until some time on July 4th. During his stay he occu-
pied room No. 5, on the door of which was a lock, with the key
on the inside, and also an inside sliding bolt. The defendant
had a small safe in his hotel, which was kept in his own bed-
room, up-stairs. At the top of each page of the hotel register
was printed this notice: "Money, jewelry and other valuables,
must be placed in the safe. Coats, shawls, and umbrellas must
be checked. Otherwise, the proprietor will not be responsible
for loss."

The defendant testified that he had called the plaintiff's atten-
tion to this notice, but did not state whether it was upon the
occasion of this visit, or at some previous time. The plaintiff
was in the habit of stopping at this hotel when he was at Phœ-
nixville, and sometimes he would write his name upon the regis-
ter, and at other times would not do so. On this occasion he
did not register. The latest date at which his name appeared
upon the register was May 15, 1888. The plaintiff denied
that his attention had ever been called by the defendant to the
printed notice, that he had ever heard the safe mentioned, or
that he knew there was one in the hotel.

On July 3d, during the day, the plaintiff collected some
money belonging to his employer. He did not deposit this in
the safe at the hotel, but kept it about his person. On the

evening of that day, thinking that perhaps he would be out until after the hotel would be closed, he obtained from the defendant's son a night key to the outside rear door, and went away, having his money in his pocket. He testified that he drank a few glasses of beer during the evening, but was not intoxicated and had never been so; that he returned to the hotel about eleven o'clock, entered by means of the night key, fastening the outer door after him, went to his room, and retired, after locking and bolting the bed-room door; and that on waking the next morning he found the door of his room standing open and that his vest was missing and his money gone.

The chamber door exhibited no evidence in the morning that the lock or bolt had been forced. There was not a scratch upon the door, and the key was in the inside of the lock. The transom of the door was three feet ten inches above the lock, and was of such a size that no person could get through it. The lock of the outer rear door was found to have been broken off, and that door itself exhibited marks of the use of some tool upon it, in forcing it open. Matches of a kind not used in the hotel were found scattered about inside and outside the house. The plaintiff's vest was found on a hat rack in the dining-room, folded up between lap robes.

Several witnesses testified that the plaintiff made contradictory statements to them in regard to the amount and kind of money he had lost. The plaintiff denied making these statements. According to the testimony of himself and other witnesses, the plaintiff was very much worried on that morning, and he testified that he was unable to fix with any certainty the amount of money stolen from him, until he and his employer subsequently estimated, with the aid of the latter's books, that the amount in his hands belonging to the employer was $168 and some cents; and, as the plaintiff had about $12 of his own money in his pockets, the amount of the loss, as nearly as could be ascertained, was a little over $180. Dorothea Wall, wife of the defendant, testified that on the night of July 3d, she heard the plaintiff talking with some one on the hotel porch, outside the door through which he entered the house, and that on entering by this door he would have to go through the dining-room to go up stairs to his chamber.

Charge of Court below.

At the close of the testimony, the court; WADDELL, P. J., charged the jury in part as follows :

[As I understand the law of this commonwealth, relating to the liability of an innkeeper, I instruct you that he is answerable for all losses happening to the goods of travelers becoming his guests, except such losses as are caused by the act of God, or the public enemy; or, by improper conduct of the guest himself, or his servant, or the companion whom he brings with him. Wherever the loss does not occur by reason of any of these excepted causes, then the innkeeper in this commonwealth, in the judgment of this court, is answerable for that loss.] [5] . . . . .

No question is made in this case about Mr. Wall being an innkeeper; no question is made about Mr. Shultz being his guest. In these particulars, therefore, you see that the case comes within the rule of the law. [Mr. Shultz had no servant, and he had no companion; and we say to you that we see no testimony in the case which would warrant the jury in concluding that Mr. Shultz, by his conduct, contributed to the theft, if that theft was committed. You will, therefore, see that, under our view of the law, if a theft was committed in this house, Mr. Wall is answerable for the amount of the loss. You will also see that, under the views of the court, you have nothing to consider except the question whether or not there was a theft in this house. If there was, then you will ascertain the measure of damages which Mr. Shultz sustained, and the measure of damages will be the amount of that loss.] [6] Was there a theft committed? . . . . .

Now, this is briefly the account of the transaction so far as he knows it. Is it discredited by the evidence or the circumstances of the case? That is a question, gentlemen, which you must settle. Do you believe what the plaintiff tells you? Is his story unreasonable? Is there anything in it which is calculated to discredit it? Is there anything in his manner which would lead you to believe he is not telling the truth? Is there anything surrounding him which justifies you in doubting his veracity? You are the judges of the credibility of all the witnesses in the cause; but you must have something tangible on which to base any doubt about their credibility. No witness is to be doubted, unless there is something either in his

Charge of Court below.

manner or in his matter, or in what he testifies, to lead the mind to doubt his credibility. I therefore say to you, is there anything in the evidence to discredit Mr. Shultz's account of this transaction? Or, is there anything in the circumstances surrounding this transaction which justifies you in doubting the truth of the story? Your attention has been called to several matters which counsel urge upon you, calculated to discredit his story. . . . .

Now, they say further that the door of the room was locked and bolted, and that the transom was of such size that the party could not get through it. There is no question about that, gentlemen, in the case. Mr. Shultz himself tells you that when he retired he locked and bolted the door, and he described the transom over the door just as the witnesses for the defence have done. The inquiry is made of you, as to how it is possible that this robbery could have been committed under these circumstances. That is the question for your consideration. But is it of such character, of such importance? Is the plaintiff here called upon to explain how this robbery was committed? If you say that was his duty, then this must be regarded as an important fact in the case. But he tells you that it was done, but how it was done he cannot explain; that under the circumstances detailed he was robbed; that he found the door open, and that it had been opened by somebody in the night. Could the key of that lock have been turned, and could that bolt have been drawn by somebody without waking him? If such a thing was possible, then it may have been done; but you will consider this in connection with the other facts of the case which go to affect the circumstances surrounding Mr. Shultz's robbery.

—After reviewing the testimony, and calling the attention of the jury to the various circumstances surrounding the alleged loss of the plaintiff, with instructions to give to each of these circumstances such weight as they might think it entitled to, the court continued :

Now, gentlemen, thus you will examine these various matters, and endeavor to ascertain whether there is anything in the case, either in Mr. Shultz's manner, or in his story, or in the circumstances surrounding the transaction, which justify you in discrediting it. If there is, then you will set it aside

Charge of Court below.

and discredit it. If there is not, you will give it just such weight as it is entitled to have, without regard to what the consequences may be. If you should determine that there was no theft, that Mr. Shultz was not robbed, that is the end of the case, so far as you are concerned; and your verdict will be for the defendant. [But if you should conclude that Mr. Shultz was robbed, then you will endeavor to ascertain the loss which he sustained. Whatever that loss was, that is the measure of damages which he is entitled to recover. He tells you that he had $181.92; the statement prepared by counsel and filed in the case, is $180, and they could not, probably, recover more than that if it should be discovered that there was more loss than that. He says it was $180. Does he know how much he lost? He tells you that he did not, upon that night, know exactly what amount of money he had, that he had to go over the books to ascertain it. He says he had $12 of his own money, but how much he had collected for Mr. Erb he could not tell without looking at the books. That on the next day he and Mr. Erb examined the books and they found that the total loss amounted to $180. Mr. Erb corroborates this part, and tells you that on the 4th of July he did examine the books with him, and that was the amount of money as near as he could tell. His own loss was about $168, and he could not tell how much Mr. Shultz had of his own. That is the way in which the plaintiff undertakes to satisfy you as to the amount of money he lost on this occasion. Can you rely upon it? If you can, or in any other way can ascertain the amount of loss which he sustained, that, as I have said to you, is the measure of damages in this action. The defendant calls your attention to the fact that upon two or three occasions, on the morning after the robbery, he repeated different amounts that he had lost, to the two young ladies; he put it at $212, $12 of which was his own. To one he said that it was in silver, and at another time he said that he had $117 in paper money. Whether that was in addition to the $212 of silver does not appear very clearly in the testimony, or whether that was a part and parcel of the $212; or whether the $212 was in silver and then he had $117 in bank notes, does not appear. Are these young ladies mistaken? Did they misunderstand him? Was he able to tell them any better than to tell Mr. Wall? Mr. Wall tells

Charge of Court below.

you that he told him his loss was about $200, $12 of which was his own. That was the morning after. He appears, by the testimony, not only of himself but of other witnesses, to have been a great deal worried on the morning of the 4th of July after the robbery. Was that worriment brought about by the discovery of the robbery when he awoke that morning, or was it the result of improper conduct the night before, and carried all through the night with him? You will judge of all these things, gentlemen, and endeavor to ascertain the correctness of his representations; and if you find the theft was committed, the measure of damages will be the loss he sustained, and your verdict will be for the plaintiff for that amount of damages.] [7]

I am requested by parties to charge you on certain points. The plaintiff asks me to say:

1. An innkeeper is bound to pay for goods stolen in the house from a guest, unless stolen by the servant or companion of the guest.

Answer: I affirm that point. I have already enlarged upon it in my general charge, and I affirm the point as it is set out here.[1]

The defendant asks me to say:

1. A guest at a hotel is bound to use reasonable care and prudence in respect to the safety of his property, and if the plaintiff in this case unnecessarily exposed his property or money to danger, and his loss resulted in consequence thereof, the verdict must be for the defendant.

Answer: I affirm that point. I have already said to you that if the negligence of Mr. Shultz in any way contributed to this loss, then he cannot recover. But if he did not, he may be entitled to recover.

2. If the jury find that there was a sufficient lock and bolt on the door of the room occupied by the plaintiff, if properly used, to insure the safety of his property, and if they believe from the evidence that the plaintiff did not make use of the safety thus supplied him, it is for the jury to find from all the facts whether, under the circumstances of the case, the plaintiff has not discharged the defendant; and if they so find, the verdict should be for the defendant.

Answer: In answer to this point, gentlemen, we say that we

see no evidence in the case which would justify the jury in concluding that the plaintiff had not made use of the proper means of safety which are furnished him, and therefore disaffirm the point.[2]

3. The fact of the guest having the means of securing himself and choosing not to use them, is one which, with the other circumstances of the case, is for the jury to consider; and if they should find from that fact, and other circumstances of the case, that the plaintiff did not exercise the ordinary care of a prudent man, under the circumstances, and was thus guilty of contributory negligence, their verdict should be for the defendant.

Answer: The principles of law, set out in that point, are correct; but we say to you that there is no evidence in the case, in the estimate of the court, which would warrant you in applying them to the law as here set out, and we therefore disaffirm the point for the reason given.[3]

4. The gist of the action is negligence; and if the jury believe that plaintiff's loss did not happen through any neglect or fault on the part of the defendant or his servants, the verdict must be for the defendant.

Answer: We disaffirm that point. We do not understand that to be the law in this state.[4]

The jury rendered a verdict for the plaintiff for $186.82 damages, and six cents costs. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal assigning for error:

1. The answer to plaintiff's point.[1]
2-4. The answers to defendant's points.[2 to 4]
5-7. The parts of the charge embraced in [ ] [5 to 7]

*Mr. I. N. Wynn* and *Mr. Archibald M. Holding* (with them *Mr. R. E. Monaghan*), for the appellant:

1. Where money is stolen from a guest at a public inn, does proof that the loss resulted to the guest, without any negligence on the part of the innkeeper or his servants, absolve the innkeeper from liability? This court, so far as we can find, has never determined this question, but there is no special dearth of authorities upon it. The rule is, that the guest is

not bound to prove negligence on the part of the innkeeper or those for whom he is responsible; the loss in itself, when proved, raising a presumption of such negligence, which, however, is not irrebuttable, but may be overcome by satisfactory proof that the loss did not occur in consequence of the landlord's neglect: Jones on Bailments, 94–96; Story on Bailments, §§ 470–472, 482; Dawson v. Chamney, 48 Eng. C. L. 164; Merritt v. Claghorn, 23 Vt. 177; Howe S. Machine Co. v. Pease, 49 Vt. 477; McDaniels v. Robinson, 26 Vt. 317 (62 Am. Dec. 574); Johnson v. Richardson, 17 Ill. 302 (63 Am. Dec. 369); Laird v. Eichold, 10 Ind. 212 (71 Am. Dec. 323); Hill v. Owen, 5 Blackf. 323 (35 Am. Dec. 124); Dessauer v. Baker, 1 Wils. (Ind.) 429; Cutter v. Bonney, 30 Mich. 259; Howth v. Franklin, 20 Tex. 729 (73 Am. Dec. 218); Weisenberger v. Taylor, 1 Bush. 275; Vance v. Throckmorton, 5 Bush. 41 (96 Am. Dec. 327); Kiston v. Hildebrand, 9 B. Mon. 72 (48 Am. Dec. 416); Norcross v. Norcross, 53 Me. 163; Reed v. Amidon, 41 Vt. 15; Sasien v. Clark, 37 Ga. 242; Metcalf v. Hess, 14 Ill. 129.

2. The rule laid down by the foregoing authorities is entirely in accord with the reasons stated in Jones on Bailments, 96, and Story on Bailments, § 471, for applying a more rigorous rule as to innkeepers, than in ordinary cases of bailment; and certainly it is more in accordance with the principles of natural justice than to hold the innkeeper responsible for losses happening without his default: Laird v. Eichold, 10 Ind. 212 (71 Am. Dec. 323). In none of the Pennsylvania cases on the subject was the question, here presented, raised. In Sneider v. Geiss, 1 Y. 34, and Houser v. Tully, 62 Pa. 92, the only question raised and decided was whether the person to whom the guest had intrusted his money, had received it in his individual capacity, or, as a servant of the proprietor and upon the credit of the house, except the further question, in the latter case, whether the plaintiff was really a guest at the time of the loss. In Walsh v. Porterfield, 87 Pa. 376, the only point involved, except a question of evidence, was how far intoxication of the guest should be regarded as contributory negligence. An expression in one of these cases seems to warrant the ruling of the court below, but it is a mere dictum.

3. The only testimony tending to show that the plaintiff

locked and bolted his bed-room door before retiring was his own. It is clear that if this testimony is true, it was a physical impossibility for the door to have been found open in the morning, in the circumstances disclosed by the testimony, and the jury could well have found that he did not fasten it. If so found, that fact was evidence of contributory negligence: Herbert v. Maxwell, 45 L. T., N. S., 649; s. c. on appeal, Weekly Notes (English) for 1882, p. 112; Oppenheim v. Hotel Co., L. R. 6 C. B. 515; Bohler v. Owens, 60 Ga. 185. It was therefore for the jury to say whether the loss would have happened if the plaintiff had used ordinary care in this respect, and if they found that his conduct contributed in any way to the loss, he could not recover: Walsh v. Porterfield, 87 Pa. 378; Story on Bailments, § 472. That the plaintiff had express notice of the means of security for his money, afforded by the defendant's safe, and an opportunity to take advantage of the same and failed to do so, was further evidence of contributory negligence. Such personal notice is a substantial compliance with the act of May 7, 1855, P. L. 479, and entitled the innkeeper to its benefits: Purvis v. Coleman, 21 N. Y. 112; Chamberlain v. West, 37 Minn. 54; Jones v. Jackson, 29 L. T., N. S., 399. The court should have submitted to the jury the question whether this notice was given.

*Mr. H. H. Gilkyson,* for the appellee:

1. The rule governing the liability of hotel keepers for loss of property of their guests, is different from that applicable to any other class of bailees. The negligence or care of the landlord does not enter into the case: 1 Addison on Torts, 608, 615; Calye's Case, 8 Rep. 63; 1 Sm. L. C., *131; Sibley v. Aldrich, 33 N. H. 553 (66 Am. Dec. 745); Hulett v. Swift, 33 N. Y. 571 (88 Am. Dec. 405); Packard v. Northcraft, 2 Metc. (Ky.) 437; Shaw v. Berry, 31 Me. 478 (52 Am. Dec. 628); Sasien v. Clark, 37 Ga. 242; Mason v. Thompson, 9 Pick. 280 (20 Am. Dec. 471). On the contrary, he has always been considered as practically an insurer of the safety of the property while the guest remains in his house. In Pennsylvania, the common-law liability of innkeepers, modified by statute, is fully recognized by the courts: Houser v. Tully, 62 Pa. 92; Walsh v. Porterfield, 87 Pa. 376. It is

held to extend even to the protection of the person of the guest: Rommel v. Schambacher, 120 Pa. 579.

2. There is not a scintilla of evidence that the plaintiff contributed by his conduct in the slightest degree to the theft, and there were no disputed facts to be submitted to the jury. The credibility of his testimony was submitted to them, and if they believed it, as they are shown by their verdict to have done, there was no evidence of contributory negligence. The act of May 7, 1855, P. L. 479, affords no protection to the defendant. On his own showing, there was no compliance by him with its requirements. His safe was not kept in the hotel "office or other convenient place," but was a small safe in his bed-room up-stairs, and there was no posting of the notices specified in the statute. The statute is in derogation of the common law, and must be construed strictly; its requirements are mandatory and must be complied with strictly, in order to escape liability: Endlich on Interp. of Stat., § 434; Esterley's App., 54 Pa. 192; Willis v. Railroad Co., 32 Barb. 398; Rue v. Alter, 5 Den. 119.

OPINION, MR. JUSTICE MITCHELL:

As long ago as Chancellor Kent's day, it was said: "The responsibility of an innkeeper for the horse or goods of his guest . . . . has been a point of much discussion in the books:" 2 Kent Com., 592. The common-law rule, as established in Calye's Case, 8 Rep. 63, was that the innkeeper was bound absolutely to keep safe the goods of his guest deposited within the inn; and Kent, after considering the cases, lays it down that "an innkeeper, like a common carrier, is an insurer of the goods of his guest:" 2 Kent Com., 594. The subject is also learnedly discussed in the note to Calye's Case, 1 Sm. L. C. 197, and the notes to Coggs v. Bernard, Idem, 307, where the learned American annotators sum up the rule in the following form: "An innkeeper is answerable for all losses happening to the goods of travelers becoming his guests, except such losses as are caused by the act of God or the public enemies, or by the conduct of the guest himself, or his servant, or the companion whom he brings with him."

The learned counsel for the appellant has presented us a strong array of authorities to show that the true foundation of

Opinion of the Court.

the rule as administered in the later cases, both in England and many of our sister states, is the negligence of the innkeeper, and the only difference between the innkeeper and ordinary bailees is that a loss is prima facie proof of the innkeeper's negligence, and throws upon him the burden of disproving it. If the question were open, it might be interesting to examine how far the desire to fix the exact limits of the liability, by resting it on something more definite than public policy, has led to modification of the severity of the common-law rule. Conceding negligence to be the foundation, we must logically concede the desired result, that, if the innkeeper shows by satisfactory proof that he took due care, he is absolved from liability. For my own part, I apprehend that the liability, like that of a common carrier, rested on the surrender of the owner's possession and control of his goods, and public policy, which, for the protection of the owner, under such circumstances, precluded every excuse for not restoring the goods to the owner, except such as were the result of vis major, the act of God or the public enemies, which would be notorious, and could not be fraudulently pretended.

But the rule, whatever its foundation, is no longer open to question in this state. In Houser v. Tully, 62 Pa. 92, the common-law liability was laid down by WILLIAMS, J., in the following emphatic terms : " His responsibility extends to all his servants and domestics, and to all the goods and moneys of his guest which are placed within the inn ; and he is bound, in every event, to pay for them, if stolen, unless they were stolen by a servant or companion of the guest." The learned counsel for appellant has distinguished this case very carefully and accurately upon the facts, and claims that the enunciation of the general rule above quoted, was not really necessary to the decision of the case actually before the court, and that it is therefore only dictum. If the case stood alone, there would be good ground for the claim, and we might be required now to re-examine the foundation and merits of the rule announced. But in Walsh v. Porterfield, 87 Pa. 376, the former case was distinctly affirmed in all the breadth of the opinion. The judge below had charged the jury that "at common law an hotel-keeper or innkeeper was liable, at all events, for the goods and baggage of his guests. . . . . That law is the same

VOL. CXXXIV—18

to-day. . . . . It was in fact insuring, as it were, the safety of the property of guests; and it was immaterial, if a loss occurred or property was stolen whilst the guest was in the hotel, by whom it was stolen, unless it was by the guest's own servant, or a fellow-guest of the party who was robbed, or the negligence of the guest; and, *however vigilant the landlord might have been, he was responsible* to the party losing the property. That was the common-law liability. He was practically an insurer of the safety of the property whilst the guest remained in his house." It was assigned for error that this charge was too broad, and eminent counsel argued there, as here, that the real foundation of the rule is the negligence of the landlord or his servants. But this court, in affirming the judgment, said: "We adhere to the statement of the law as laid down by our late Brother WILLIAMS in Houser v. Tully, as to the extent and character of the liability of innkeepers for the goods of their guests. An innkeeper is bound to pay for goods stolen in his house from a guest, unless stolen by the servant or companion of the guest. . . . . The learned judge below, in his charge to the jury, evidently adopted this case as his chart, and there is no error in his instructions upon the law." After this deliberate affirmance of the common-law rule, in a case where it was applied, and the correctness of the instruction distinctly assigned for error, we must regard the rule as settled.

The learned judge, therefore, was right in the general instruction he gave the jury as to the foundation of the plaintiff's case. In the press of the trial, however, the defence, unfortunately, did not receive the same consideration. Neither the question of contributory negligence, nor the effect of the statute of 1855, was presented to the jury as it should have been.

Volenti non fit injuria, and conduct of the plaintiff contributing to the loss, whether voluntary or negligent, is always a defence. This principle, though not very clearly enunciated, was applied to the liability of an innkeeper, even in Calye's Case, where the first resolution was that, if the horse was put to pasture at the guest's request, and stolen, the innkeeper was not liable; and the eighth (8 Rep. 63), that, if the innkeeper requires his guest to put his goods in such a chamber under lock, and the guest leave them in an outer court, and

they are stolen, the innkeeper shall not be liable. And, however it might have been in the days of good Queen Bess, when Calye's Case was decided, and when the length of his wine bill might have been deemed sufficient consideration for the duty of an innkeeper to take care of his guest, drunk or sober, it is now held in our own case of Walsh v. Porterfield that intoxication is no excuse for the negligence of a guest which contributes to his loss.

The evidence in the present case leaves the circumstances of the robbery in some degree of mystery. According to the plaintiff's story, he locked and bolted his chamber door on going to bed, and found it open on waking in the morning. The back outer door of the hotel bore marks of violence with a hammer or other tool; the catch of the dead-latch was broken off, and matches of a kind not used in the hotel were found scattered at various points. All this pointed to a burglary by outside parties. Yet the evidence is that the plaintiff's bedroom door bore no marks of violence anywhere; the key was in the lock, and the transom window was but a foot high, and swung in the middle, leaving only a space of six inches through which no person could possibly climb. How, then did the thief get in? There is no theory which does not encounter some difficulties, and the first question that arises in the mind is whether plaintiff may not be mistaken in supposing he locked and bolted his door. The testimony is, that, though a sober man, he was not a total abstainer, and had been drinking that evening. Did he get more than he thought, and is his recollection thereby beclouded? Or did he lock and bolt the door, as he thinks, and did the beer get him up again in a confused condition of mind, and was his open door the result of this? The other circumstances only add to the difficulty of a satisfactory explanation. The evidence in general, as already said, points to a robbery by outside parties. But the vest carefully folded, and laid between the two lap blankets on the hat-rack in the dining-room, is hard to reconcile with such a theory. Again; the evidence of Mrs. Wall as to the voices on the porch, and of Rahn as to the men asking for plaintiff, suggest the possibility of other parties in company with plaintiff, and the loss of the money before he entered his room. As already said, there is no view of the evidence that does not meet with some difficulty, and such difficulty is always for the jury to solve. Jurors are to

exercise the same common sense and judgment in the jury-box that they do as men in the affairs of life, only with a strict regard, under the direction of the court, to the nature, relevancy, and weight of evidence upon both sides. They cannot base verdicts on surmise or conjecture without evidence, but they are not bound to believe an incredible story because no witness contradicts it. It is for them to survey the whole case, and say whether the party having the burden of proof has met it by a satisfactory preponderance of evidence. The learned judge below was of opinion that there was no sufficient evidence of plaintiff's negligence to be considered by the jury; and therefore, though stating the law correctly as to such negligence, he limited the jury to the consideration of the single question whether or not there was a theft. In this view we are unable to concur. The difficulties in the way of the plaintiff's theory, and the general uncertainty of the entire occurrence, should have sent the whole case to the jury with an affirmance of defendant's second and third points.

The evidence in regard to the safe, and the notice to guests, is not as full or satisfactory as it might be, but it was sufficient to go to the jury. The provisions of the act of May 7, 1855, P. L. 479, in regard to the places where notices must be posted, are intended to secure knowledge brought home to the guest. They may be said to be mandatory in the sense that, as they amount to constructive notice, they must be strictly complied with, if constructive notice is relied on; but if notice in fact is proved, then the provisions for constructive notice become immaterial. Defendant testified positively to having called the plaintiff's attention to the notice at the head of the hotel register, though it was probably not on this particular visit. The plaintiff denied it. This question should have gone to the jury, for them to determine, under all the circumstances, the lapse of time since plaintiff saw the notice, if they find that he did have his attention called to it, the frequency of his visits, and his consequent familiarity with the customs of the house, etc., whether he should be treated as having notice of the existence of a safe, and, if so, whether his omission to avail himself of that protection, and his carrying such an amount of money to his bedroom, was negligence for which he must himself bear the loss.

Judgment reversed, and venire de novo awarded.