**Thelma G. PARASKEVAIDES,
et al., Appellants,**

**v.**

**FOUR SEASONS WASHINGTON,
Appellee.**

**Nos. 01–7121, 01–7134.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 12, 2002.
Decided June 14, 2002.

Barbara I. Michaelides argued the cause for appellants. With her on the briefs were Nicholas H. Cobbs and Susan J. Condon.

Karla Grossenbacher argued the cause for appellee. With her on the brief was Joseph R. Damato.

Before: SENTELLE and GARLAND, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellants Thelma and Christina Paraskevaides, together with their insurance company American Home Assurance Company, brought suit against Four Seasons Washington after over one million dollars worth of their jewelry was stolen from a convenience safe located in their hotel room. The Four Seasons defended on grounds that their liability was limited by District of Columbia law. The district court granted summary judgment in favor of the hotel, finding that the Four Seasons had limited its liability pursuant to the District of Columbia's Innkeeper Statute, and on the alternate ground that the Paraskevaides[1] were contributorily negligent for using their in-room safes rather than safety deposit boxes. Because the Four Seasons failed to comply fully with the Innkeeper Statute, and because we conclude that placing valuables in a locked, in-room convenience safe located inside a locked hotel room does not constitute contributory negligence as a matter of law, we reverse and remand the case to the district court for further proceedings.

## I. Background

Appellants Thelma and Christina Paraskevaides ("the Paraskevaides") checked into the Four Seasons Washington ("the Four Seasons") in Washington, D.C. on September 22, 1997. They brought with them close to 1.2 million dollars worth of jewelry to wear to various political functions around the city. The Paraskevaides stayed in a suite that consisted of two bedrooms adjoined by a living room. Each bedroom and the living room contained a "convenience safe" that was located in the back of a closet and accessible via keys provided by the hotel. The Paraskevaides placed their valuables (i.e., jewelry, travel documents, traveler's checks, etc.) in the bedroom safes rather than the safety deposit boxes that were provided by the hotel and located near the hotel's reception area.

On September 27, 1997, the Paraskevaides left their hotel room with their room and safe keys. Upon returning to their suite, they discovered that their room had been entered (although not forcibly) and that their bedroom safes were open and empty. Both hotel security personnel and the Washington Metropolitan Police Department were notified, but the items were never recovered. According to the hotel manager, the suite doors and safes could be opened by either of two master keys, as well as the guest room key. The manager also testified that at least one

---

1. The author recognizes that the rules of grammar dictate that to create the plural form of a proper name that ends in an "s," one must add an "es." E.g., The Chicago Manual of Style § 6.5 (13th rev. ed. 1982). The plural of "Paraskevaides" would therefore be "Paraskevaideses." However, the author finds the name "Paraskevaideses" so distracting that he chooses to ignore the rule. See In re Gaston & Snow, 243 F.3d 599, 601 n. 1 (2d Cir.2001). No such willingness to ignore the rules of the English language should be imputed to Judge Garland or Senior Judge Silberman.

master key ring had been missing since March 1997. Apparently neither the room locks nor the safe locks had been changed. The hotel did not give any notice to appellants that the keys were missing.

District of Columbia Code § 30–101,[2] "Liability for loss or destruction of, or damage to, personal property of guests," states in pertinent part:

(a) If a hotel, motel or similar establishment in the District of Columbia which provides lodging to transient guests: (1) Provides a suitable depository (other than a checkroom) for the safekeeping of personal property (other than a motor vehicle); and (2) displays conspicuously in the guest and public rooms of that establishment a printed copy of this section (or summary thereof); that establishment shall not be liable for the loss or destruction of, or damage to, any personal property of a guest or patron not deposited for safekeeping, except that this sentence shall not apply with respect to the liability of that establishment for loss or destruction of, or damage to, any personal property retained by a guest in his room if the property is such property as is usual, common, or prudent for a guest to retain in his room. In the case of any personal property of a guest or patron deposited in such a depository for safekeeping, that establishment shall be liable for the loss or destruction of, or damage to, that property to the extent of the lesser of $1,000 or the fair market value of the property at the time of its loss, destruction, or damage.

On the back wall of each bedroom closet in the Paraskevaides' suite that contained a convenience safe, the Four Seasons had posted a notice that explained the hotel's limited liability with respect to objects not placed in the safety deposit boxes provided by the hotel. This "NOTICE TO GUESTS" stated in its entirety:

You are hereby notified that the Management provides a suitable depository for the safekeeping of personal property of its guests and you are invited to use the same.

Under the laws of the District of Columbia, if a hotel provides a suitable depository for the safekeeping of personal property, the hotel is not liable for the loss or destruction of, or damage to, any personal property of a guest not deposited for safekeeping, except for property as is usual, common, or prudent to retain in his room. Where property is deposited in a depository for safekeeping, the hotel is liable for the loss or destruction of, or damage to, that property only to the extent of the lesser of $1000.00 or the fair market value of the property at the time of its loss, damage or destruction.

These disclaimers were only located on the back walls of closets that contained convenience safes; they were not posted anywhere else in the hotel. The hotel had also placed a disclaimer sticker that summarized the hotel's limited liability on the door of each safe itself. These stickers stated in their entirety:

This room safe is provided solely as a convenience for our guests. It is not a substitute for the fireproof, front office safe maintained by the hotel where your money, jewelry, documents or other articles of value may be placed for safe keeping. This hotel is not responsible for valuables placed in this room safe. Use of this room safe does not extend

---

**2.** At the time the parties filed the cross-motions for summary judgment in this case, the Innkeeper Statute was codified at D.C.Code § 34–101. Since that time, the statute has been re-codified at D.C.Code § 30–101. For convenience purposes, we refer to the Innkeeper Statute at issue in this case as D.C.Code § 30–101.

this hotel's liability under District of Columbia Innkeeper Statutes. If you desire to use the room safe, take the key with you when you leave. Leave the key in the lock when you check out. In the event that your key is lost, there will be a $25.00 charge for opening the safe.

## II. Proceedings Below

The Paraskevaides sued the Four Seasons for, *inter alia,* gross negligence and breach of warranty of safety and security for the theft of their jewelry. The Four Seasons asserted two affirmative defenses: a statutory limitation of liability pursuant to section 30–101 and contributory negligence. The Paraskevaides moved for summary judgment on the issue of liability, contending that the Four Seasons failed to comply fully with the requirements of section 30–101 and therefore could not take protection under the statute's limited liability provision. The Four Seasons cross-moved for summary judgment on the issue of liability, contending that they had complied with the statutory requirements by providing a suitable depository for guests' valuables and by conspicuously placing notices of its limited liability on the walls next to the in-room convenience safes. The Four Seasons also claimed that the Paraskevaides had actual notice of the hotel's limited liability through prior stays at the hotel and prior usage of the safety deposit boxes. Finally, the Four Seasons contended that several of the Paraskevaides' claims were unrecognized in the District of Columbia.

On June 19, 2001, the district court denied the Paraskevaides' motion for summary judgment and awarded summary judgment to the Four Seasons on grounds that D.C.Code § 30–101 limited the Four Seasons' liability to the Paraskevaides. The court then provided three alternative reasons for granting summary judgment to the Four Seasons: 1) several of the Paraskevaides' counts are not recognized in the District of Columbia; 2) the Paraskevaides failed to show that the Four Seasons did not exercise reasonable care; and 3) the Paraskevaides' contributory negligence, which resulted from "choosing to place $1.2 million dollars worth of jewelry in a hotel room safe," acted as a complete bar to recovery. *Paraskevaides v. Four Seasons Washington,* 148 F.Supp.2d 20, 27 (D.D.C.2001). This appeal followed.

## III. Analysis

A district court properly grants summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case, the Paraskevaides appeal the district court's decision to grant summary judgment in favor of the Four Seasons and to deny summary judgment in their favor on the issue of liability. Thus to succeed on appeal, the Paraskevaides must demonstrate that there is a genuine dispute over a material fact, such that a reasonable jury could rule in their favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. We review the district court's summary judgment ruling *de novo. Gilvin v. Fire,* 259 F.3d 749, 756 (D.C.Cir.2001).

### A. Liability

■ Under the general common law doctrine of *infra hospitium,* an innkeeper is strictly liable for loss or damage to a guest's property "unless the property is lost or destroyed by an act of God, the public enemy, or by fault of the guest." *Hallman v. Federal Parking Services, Inc.,* 134 A.2d 382, 384 (D.C.1957); *see also Governor House v. Schmidt,* 284 A.2d 660, 661 (D.C.1971); *Hotel Corp. of America v. Travelers Indem. Co.,* 229 A.2d 158, 159 (D.C.1967). Many jurisdictions, however,

have limited an innkeeper's common law liability to his guests through statutory enactment. Section 30–101 of the D.C.Code is such a limiting statute, as the district court recognized. *See Paraskevaides*, 148 F.Supp.2d at 26. Under the statute, a hotel limits its liability to its guests if it provides, and properly notifies its guests of, a suitable depository for the safekeeping of their valuable items and of the statutory limitations on its liability. *Id.*

The district court held that the Four Seasons complied with the statutory requirements of section 30–101, reasoning that a hotel is only liable for a guest's property loss if it fails to display a copy of the statute, fails to post the notice conspicuously, or if the guest's property is the type that would usually or commonly be kept in a guest's room. *See id.* Finding that the Four Seasons posted a conspicuous summary of section 30–101 next to the in-room convenience safes and finding that it was not usual, common or prudent to place $1.2 million worth of jewelry in such safes, the district court held that the Four Seasons complied with the statutory requirements "and no reasonable jury, based on the evidence proffered by the plaintiffs, could make a finding to the contrary." *Id.*

We disagree. In limiting a hotel's liability, section 30–101 deviates from the general common law and must therefore be strictly construed. *See Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325 (D.C.1999) ("[N]o statute is to be construed as altering the common law, farther than its words import.") (internal quotation marks omitted); *see also Picker v. Searcher's Detective Agency, Inc.*, 515 F.2d 1316, 1319 (D.C.Cir.1975). The plain language of the statute states quite clearly that a hotel must "display[ ] conspicuously in the guest *and public rooms* of [the hotel] a printed copy" of the limiting statute (or summary thereof). D.C.Code

§ 30–101(a) (emphasis added). It is undisputed that the Four Seasons only posted a copy of the limiting statute in the guest rooms of the hotel, thereby failing to post notices in any of the hotel's "public rooms." The Four Seasons nonetheless contends that its posting of the "summary of the statute and the accompanying disclaimer notice were sufficient to place the Paraskevaides on notice of the liability limitations provided by the Innkeeper Statute." The district court agreed, ruling that by posting a printed copy of section 30–101 next to the in-room convenience safe, the Four Seasons "place[d] the plaintiffs on notice and satisf[ied] [its] obligation under the statute to do such." 148 F.Supp.2d at 26. Perhaps the Paraskevaides had notice; perhaps not. But whether they did is irrelevant to our disposition of this case. The statute says what it says: a hotel must "display[ ] conspicuously in the guest *and public rooms* of [the hotel] a printed copy" of the statute in order to limit its liability to guests. D.C.Code § 30–101(a) (emphasis added). The Four Seasons undoubtedly displayed a copy or summary of the statute in its guests rooms. It may even have done so "conspicuously," although that remains unclear. What is clear is that the Four Seasons did not display, conspicuously or otherwise, a copy or summary of the statute in its public rooms. Therefore, when we strictly construe this statute, as we must, we conclude that the Four Seasons failed to comply fully with the statute's requirements for limiting its liability to the Paraskevaides.

Other courts interpreting similar Innkeeper Statutes agree that strict compliance with a jurisdiction's Innkeeper Statute is necessary before a hotel may avail itself of the statute's limitation on liability. *See Searcy v. La Quinta Motor Inns, Inc.*, 676 So.2d 1137, 1141 (La.Ct.App.1996) (literal compliance with statutory provisions

is required; fact that hotel posted requirements behind guest door in partial compliance with statute does not remove statutory requirement to post statute behind registration area as well); *Florida Sonesta Corp. v. Aniballi,* 463 So.2d 1203, 1207 (Fla.Dist.Ct.App.1985) (denying limited liability to hotel that posted required notice on back of guest bathroom doors, but failed to post notice in the office, hall or lobby of the hotel as required by statute); *Skyways Motor Lodge, Corp. v. General Foods Corp.,* 403 A.2d 722, 723 (Del.1979) (hotel found in non-compliance with statute that required posting of hotel's limited liability "in every lodging room and other conspicuous places" when it only posted notices on back of room doors and on registration card); *Insurance Co. of North America v. Holiday Inns of America,* 40 A.D.2d 885, 337 N.Y.S.2d 68, 69–70 (1972) (hotel found in non-compliance with statute that required posting "in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of [the] hotel," when it only posted notices in the guest rooms).

The Four Seasons attempts to strengthen its position before this Court by claiming that the Paraskevaides had *actual* notice of both the availability of a "suitable depository" for their valuables and the hotel's limited liability with respect to their valuables because they had used the Four Seasons' safety deposit boxes on prior visits to the hotel. Maybe so. But if we must strictly construe the statute, then it is altogether irrelevant whether the Paraskevaides had actual notice of the hotel's limited liability if the Four Seasons nonetheless failed to abide by the statute's terms to ensure its limited liability. We are not alone in our position. Other courts have similarly rejected the Four Seasons' "actual notice" argument. *See North River Ins. Co. v. Tisch Mgt., Inc.,* 64 N.J.Super. 357, 166 A.2d 169, 172 (1960) ("Evi-

dence of actual knowledge by the guest of the availability of a hotel depository and of the limited statutory liability, is, by the weight of the authority, with which we agree, not an acceptable substitute for strict compliance with the statute as to notice by the hotelkeeper."); *Johnston v. Mobile Hotel Co.,* 27 Ala.App. 145, 167 So. 595, 596 (1936) (finding that actual notice of a hotelkeeper's limited liability is not compliance with the statute's requirements); *Featherstone v. Dessert,* 173 Wash. 264, 22 P.2d 1050, 1053 (1933) ("The statute makes no provision for an actual notice, and a strict construction of the statute does not permit the innkeeper who has failed to comply with the terms of it to assert the actual notice of the guest as a sufficient substitute for the statutory requirement."); *Heinz v. Leeds & Lippincott Co.,* 55 F.2d 829, 830–31 (3d Cir.1932) ("Certainly there ought to be a strict compliance with the act if the hotel owner is to claim its benefits; and it is doubtful whether actual notice ... would operate as a bar to plaintiff's recovery."). Although a few courts have addressed the question of actual notice and reached the opposite conclusion, we reject their analyses as having preceded the long line of cases offered *supra. See Nesben v. Jackson,* 89 W.Va. 470, 109 S.E. 489, 490 (1921) ("An inn guest's actual knowledge that his host requires a deposit of his jewelry, money, and other valuables in the office, as a condition of liability, is obviously binding upon him. Actual notice is always more potent than merely constructive notice."); *Shultz v. Wall,* 134 Pa. 262, 19 A. 742, 745 (1890) ("[I]f notice ... is proved, then the provisions for constructive notice become immaterial.").

Acknowledging that it failed to post the necessary notices in the public rooms of the hotel, the Four Seasons nonetheless argues that "the most reasonable interpretation of the statute is that a posting of the

summary of the statute in the public room was not required in this case." By way of explanation, the Four Seasons asserts that "the posting required by the statute is to be in the guest rooms for guests of the hotel, and the posting in the public rooms is for patrons of the hotel." According to the Four Seasons, because the Paraskevaides were guests of the hotel, they were only entitled to a posting in their guest rooms. This interpretation of the statute is certainly not the "most reasonable" one we can think of. In fact, it is altogether unreasonable. Only through a strained (perhaps wishful) reading of the statute would one conclude that the statute applies differently to different classes of persons who visit hotels. The statute says what it says: a hotel must "provide[] a suitable depository" for one's personal property and must "display[] conspicuously in the guest and public rooms" a copy or summary of the hotel's liability with respect to that property. These two criteria are set forth in the statute before the statute even mentions its applicability to "guest[s] or patron[s]." D.C.Code § 30–101. Thus the meaning of the statute is plain. If a hotel provides a suitable depository for one's property, and if a hotel posts a copy or summary of the statute in its guest and public rooms, then the hotel has met its obligation under the statute. If a guest nonetheless chooses to place $1.2 million worth of jewelry in her in-room safe, and if that jewelry is subsequently stolen, then the statute applies. If, however, a hotel provides a suitable depository but does not post the statute in the guest and public rooms—in effect, if a hotel only complies with part of the statutory requirements—then the statute does not apply. No plain reading of the statute leads us to conclude that different posting requirements are in effect for different classes of persons visiting a hotel in the District of Columbia. Because the Four Seasons failed to post a copy or summary of D.C.Code § 30–101 in its public rooms, we hold that the Four Seasons cannot rely on the statute to limit its liability to the Paraskevaides.

Once we conclude that the Innkeeper Statute does not apply to the Four Seasons, we are left with the question: What law, in fact, does apply? The district court noted, as do we, that under the common law doctrine of *infra hospitium* an innkeeper is strictly liable for loss or damage to a guest's property. However, the district court reached no conclusion as to whether this particular common law doctrine applies in the District of Columbia. *See* 148 F.Supp.2d at 26 ("The common law rule of infra hospitium, *to the extent that it exists in DC,* has been limited and qualified by" the Innkeeper Statute.) (emphasis added). Because we are reviewing the district court's decision *de novo,* we could, if so inclined, decide the issue of what form of the doctrine of *infra hospitium* applies in the District of Columbia. But as this issue was not briefed before us, we conclude that in the interests of justice, the appropriate action is to remand this issue to the district court for further proceedings. We simply note that whatever precise rule of common law applies in the District of Columbia, D.C.Code § 30–101 almost certainly deviates from that common law and must be strictly construed.[3] When the statute is so construed, it is clear that the Four Seasons failed to comply fully and consequently may not rely on the statute to limit its liability to the Paraskevaides.

**3.** In oral argument, the awkwardness of the Four Seasons' suggested reading became quite clear when it was unable to answer the question as to what category applied to a guest of a guest (not a paying patron) who came to a private room.

## B. Contributory Negligence

After ruling that the statute limited the Four Seasons' liability to the Paraskevaides, the district court provided alternative bases for ruling in favor of the Four Seasons. The district court ruled that several of the Paraskevaides' counts, including breach of safety and security warranty, breach of duty to invitee, and gross negligence, were not recognized by the District of Columbia "as being actionable in cases pertaining to property loss in hotel establishments" and therefore dismissed them. 148 F.Supp.2d at 26. The district court then ruled that the Paraskevaides had "failed to establish the bare bones of their negligence claim because they have failed to show that [the Four Seasons] did not exercise reasonable care." *Id.* at 27. The district court held instead that it was the Paraskevaides, not the Four Seasons, who were negligent for "choosing to place $1.2 million dollars worth of jewelry in a hotel room safe." *Id.* The district court then ruled that the Paraskevaides' contributory negligence acted as a complete bar to their recovery. *Id.*

Before beginning our analysis, we briefly review the standard a court must apply when ruling on a motion for summary judgment: whether the moving party has shown that there is no genuine dispute of material fact and it is therefore entitled to judgment as a matter of law. As such, it was appropriate for the district court to rule that the Paraskevaides were contributorily negligent only if it is negligence, *as a matter of law,* for hotel guests to place their valuables in a locked safe within their locked rooms.

 Whether a plaintiff is contributorily negligent is usually a question for the jury. "Only in exceptional cases will questions of negligence [and] contributory negligence ... pass from the realm of fact to one of law. Unless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion, the questions are factual and not legal." *Shu v. Basinger,* 57 A.2d 295, 295–96 (D.C.1948) (footnote omitted). Indeed, it is the rare case with "evidence so clear and unambiguous that contributory negligence should be found as a matter of law." *Tilghman v. Johnson,* 513 A.2d 1350, 1351 (D.C.1986) (per curiam). The district court's decision reflects its conclusion that this is the rare and exceptional case—that the Paraskevaides demonstrated such a "lack of prudence in choosing to place $1.2 million dollars worth of jewelry in a hotel room safe" that a fair-minded jury could reach this and only this conclusion. 148 F.Supp.2d at 27. Based on the facts before us, we conclude otherwise.

The Paraskevaides provided evidence that even though they normally do not travel with $1.2 million worth of jewelry, they did so on this particular trip because they were scheduled to attend such functions as lunch on Capitol Hill, a reception hosted by the First Lady, dinner with the Secretary of State, and breakfast at the Vice President's residence. They also provided evidence that they were uncomfortable placing their jewelry in the safety deposit boxes provided by the Four Seasons because the location of the boxes was "not in a ... private place in the hotel," but was instead in a room with a door that faced the lobby. According to the Paraskevaides, "when you go in to get some things or put things in [the safety deposit boxes], then you walk [among] people [in the lobby]." Given the location of the safety deposit boxes, the Paraskevaides "felt it was safer" to place their valuables in the locked in-room convenience safes.

We cannot conclude that by traveling with valuable jewelry to attend high-level political functions in Washington, D.C., and by placing those valuables in a locked room safe because it was more remote and

appeared safer than a safety deposit box, the Paraskevaides were negligent as a matter of law. We conclude instead that these facts present a genuine issue of material fact that is more appropriately resolved by a jury. Traveling with valuables is not in itself negligent behavior. Indeed, it is necessary and unavoidable in many cases. In *Kraaz v. La Quinta Motor Inns, Inc.*, 396 So.2d 455, 459 (La.Ct.App. 1981), *aff'd*, 410 So.2d 1048, 1053 (La.1982), the court explained that for a plaintiff to be guilty of contributory negligence, his own conduct must have been unreasonable in view of the foreseeable risk. The court then held that it was not contributorily negligent for plaintiffs to keep $25,000 in a purse inside a motel room for purposes of buying a racehorse during their trip. The court reasoned that "the risk of an assailant opening their motel room door with a passkey in the middle of the night, leaving them no time to defend themselves from attack or call for help, was not one which could have been foreseeable to the plaintiffs." *Id.* In the case before us, we are faced with facts that suggest a master key was used to enter the Paraskevaides' room and then enter their locked safes. Not knowing that a master key was unaccounted for, the Paraskevaides were not unreasonable as a matter of law in using the in-room safes. The in-room convenience safe obviously serves some purpose to hotel guests. If not to secure valuables, then what? While we recognize that $1.2 million is considerably more than the $25,000 at issue in *Kraaz*, we also recognize that the Four Seasons Washington is not a popular price motel.

Perhaps the Paraskevaides should not have brought as much jewelry as they did. Or, if intent on bringing their jewelry, perhaps they should have made arrangements to secure it elsewhere, perhaps a bank. But these are issues of fact to be decided by a jury, not a court. It is not for courts to determine as a matter of law the value of items that a traveler may place in an in-room safe without being deemed to have acted negligently. To do so raises questions that we are ill-equipped to answer. Where would we draw the line, and on what basis? Would it be negligent for a guest at a motel to place a $500 watch in an in-room safe? If not, would it be negligent for a guest at an economy hotel to place a $5,000 necklace in the safe? What if a collector staying at the hotel nearest a rare book auction placed a $35,000 signed, first edition of To KILL A MOCKINGBIRD in his in-room safe? Or if the lucky traveler placed her $1 million winning lottery ticket in the in-room safe? More importantly, what if these guests had used the hotel's safety deposit boxes, the hotel had complied with the Innkeeper Statute, but their property was nonetheless lost or destroyed? Should it make a difference that the guests would recover at most $1,000? *See* D.C.Code § 30–101.

Based on the record before the court, we cannot conclude that by placing items of value in locked convenience safes located in their locked hotel room, the Paraskevaides were negligent *as a matter of law*. The in-room safes are provided to hotel guests for a purpose—we assume for the placement of some valuables that require the security of a locked depository. It is simply not for a court to decide as a matter of law either the circumstances in which it is acceptable for a guest to use the in-room safes, or the value of items that a guest may place in the safes without being considered negligent. Accordingly, we reverse the district court's decision that the Paraskevaides were contributorily negligent as a matter of law for placing their jewelry in the locked, in-room convenience safes.

## IV. Conclusion

For the reasons stated, we hold that the Four Seasons failed to comply fully with

the statutory requirements of D.C.Code § 30–101, and is consequently unable to limit its liability to the Paraskevaides as provided for in the statute. Because the statute is not applicable to this case, we remand to the district court for further proceedings to determine the issue of the Four Seasons' liability. We also hold that the Paraskevaides were not contributorily negligent as a matter of law and instead direct that the issue of contributory negligence be submitted to the jury.