MacARTHUR AREA CITIZENS ASSOCIATION, Appellant,

v.

REPUBLIC OF PERU, et al.

No. 85–5828.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1986.
Decided Jan. 23, 1987.

James L. Dooley, Washington, D.C., for appellant.

Martin J. Jaron, Jr., with whom Eugene M. Propper, Washington, D.C., was on brief for appellee, Republic of Peru.

David R. Addis and Jeffrey M. Johnson, Washington, D.C., were on brief for appellees, Shannon & Luchs and Laura Astiz.

Before BORK and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case involves an effort by the MacArthur Area Citizens Association to collect damages from the Republic of Peru for Peru's temporary occupation and use of a building as a chancery for its Naval Attache. The building, located at 5758 MacArthur Boulevard in the District of Columbia, is zoned for residential occupancy. Peru's conversion of the property to a chancery constituted, in the view of the Citizens' Association, a violation of local zoning laws. The District Court dismissed the suit, holding that Peru's actions were immune from judicial scrutiny under the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602–1611 (1982). We conclude that the District Court correctly interpreted FSIA's provisions and accordingly affirm.

## I

After the State Department had advised that it had no objection, Joint Appendix (J.A.) at 9, Peru purchased the MacArthur Boulevard building in June 1984. Peru then began making various alterations designed to render the property a suitable chancery. According to the complaint, Peru bricked up various openings, installed bars on other openings, and installed an elaborate burglar alarm system. J.A. at 10. The Association also observed, in alarmed tones, that the "interior of the dwelling was ruthlessly stripped of its residential type lighting fixtures" and replaced by harsh fluorescent lights. *Id.* In addition to what the Association colorfully calls these physical "transmogrifications," Peru's occupancy led, the Association claims, to congestion from an increased number of chancery cars "vying for close-in parking places." J.A. at 11.

Believing that its new neighbor was causing denigration and depreciation of the value of its members' residences nearby, the Association repaired to federal district court in October 1984. The Association sought injunctive relief against Peru, the State Department, and the District of Columbia, as well as damages from Peru's real estate agents in connection with the purchase of the property.[1] The complaint was later amended to include a damages claim against Peru. J.A. at 19. Feeling the sting of neighborhood antipathy (or at least that of the Association), Peru voluntarily vacated the premises in June 1985, thereby mooting the claim for injunctive relief.

In an order dated June 21, 1985, the District Court dismissed the remaining claims for damages. J.A. at 21–26. The court dismissed the claims against Peru on FSIA grounds, rejecting the argument that any exception to FSIA immunity applied to render Peru liable for the MacArthur Boulevard imbroglio. J.A. at 23–25. Refusing to exercise pendent jurisdiction, the court also dismissed the damages claim against Peru's real estate agents. J.A. at 26; *see also supra* note 1.

## II

FSIA sets forth "the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states before Federal and State courts in the United States." H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6610. This Act's basic premise is that foreign sovereigns will enjoy immunity from suit unless one of the specific statutory exceptions applies. Moreover, under FSIA, "immunity remains the rule rather than the exception." *Gibbons v. Republic of Ireland*, 532 F.Supp. 668, 671 (D.D.C.1982). However, subject matter and personal jurisdiction exist in the federal courts over claims for which the foreign sovereign is

---

1. The complaint also sought expenses and attorneys' fees from all defendants. With respect to the real estate agents, the complaint sought punitive damages in the amount of three times the total commissions garnered by the firm from the sale. After dismissing the complaint against Peru on FSIA grounds, the District Court declined to exercise pendent jurisdiction over this claim. J.A. at 26. Appellant does not challenge this ruling on appeal. *But see infra* pp. 923–924.

not entitled to immunity. 28 U.S.C. §§ 1605–1607 (1982).

In the case at hand, there is obviously no question that Peru is a foreign state entitled to the benefits and protections of FSIA. The dispute is whether one of the three FSIA exceptions invoked by the Association covers Peru's conduct and thereby renders that Nation subject to suit in the courts of the United States. Specifically, appellant urged the District Court, and now us, to apply the "commercial activity" exception, 28 U.S.C. § 1605(a)(2), the "immovable property" exception, *id.* § 1605(a)(4), or the "tortious act" exception, *id.* § 1605(a)(5), to FSIA immunity. We consider each in turn.

*First.* The "commercial activity" exception eliminates immunity in cases "in which the action is based upon a commercial activity carried on in the United States by the foreign state...." *Id.* § 1605(a)(2). The definitional section of FSIA explains that

> [a] "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

*Id.* § 1603(d). We thus look to the *nature* of Peru's actions. Our inquiry is aided by the FSIA's legislative history, which provides several examples of conduct deemed to fall within the exception:

> [A] contract by a foreign government to buy provisions or equipment for its armed forces or to construct a government building constitutes commercial activity. The same would be true of a contract to make repairs on an embassy building.

H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad. News 6604, 6615.

■ Appellant characterizes Peru's conduct as being in the nature of operating an office in a residential neighborhood, not of operating a chancery to conduct diplomatic relations. The argument seems to be that "[i]f Peru's occupancy had not been *commercial,* there would have been no lawsuit." Appellant's Reply to Peru's Brief at 16 (emphasis in original); *see also* Appellant's Brief at 11. The notion apparently lurking behind this tautological assertion is that if Peru's occupancy were not an arguable violation of the zoning ordinances— that is, were not a non-residential use—the Association would not have sued alleging zoning violations. In other words, appellant seeks to equate, for FSIA purposes, the District of Columbia's zoning law designations of "residential" and "non-residential" with the immunity concepts of "non-commercial" and "commercial." We disagree. We are in accord with the District Court's sensible conclusion that operation of a chancery is, by its *nature, cf.* 28 U.S.C. § 1603(d), governmental, not commercial.[2]

*Second.* The "immovable property" exception removes immunity in cases "in which ... rights in immovable property situated in the United States are in issue." *Id.* § 1605(a)(4). This court had occasion only two years ago to construe the reach of this exception. In *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985), the court held that "[t]he immovable property exception was enacted to codify, with minor modifications ... the pre-existing real property exception to sovereign

---

**2.** This conclusion is supported by various additional tests which have been fashioned to aid in the "commercial activity" determination. Specifically, use of a residential building as a chancery is not commercial because (1) it is not the type of activity "an individual would customarily carry on for profit," *Letelier v. Republic of Chile,* 748 F.2d 790, 797 (2d Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); (2) it is an activity in which only a

sovereign can engage, *Resource Dynamics International, Ltd. v. General People's Committee,* 593 F.Supp. 572, 575 (N.D.Ga.1984); 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3662, at 383 (1985) (citing cases); and (3) it does not directly involve commercial marketing and the execution of contracts, *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1379–80 (5th Cir.1980).

immunity recognized by international practice." We observed that the practice was to decline "to extend the immunity of a foreign sovereign to 'an action to obtain possession of or establish a property interest in immovable property located in the territory of the state exercising jurisdiction.'" *Id.* at 1521 (quoting Restatement (Second) of Foreign Relations Law of the United States § 68(b) (1965)).

■ Consideration of the statutory language itself and the authoritative construction of that language in *Asociacion de Reclamantes* leads us to conclude that the Association's claim falls outside the ambit of the "immovable property" exception. That exception was not intended broadly to abrogate immunity for any action touching upon real estate. *Cf. id.* (exception not to be given "most expansive reading possible"). Here, the Association is obviously not seeking to establish any rights in 5758 MacArthur Boulevard. It makes no claim to any interest in that property. Upon analysis, the Association's complaint sounds not in the law of real property at all, but the law of nuisance.

*Third.* We thus turn to the final possible exception, namely "tortious activity." Section 1605(a)(5) removes sovereign immunity for cases "in which money damages are sought against a foreign state for ... damage to or loss of property, occurring in the United States and caused by a tortious act or omission of that foreign state...." 28 U.S.C. § 1605(a)(5). It is unclear precisely what must be alleged to bring a claim within this exception and thereby confer jurisdiction. There may well be instances in which an allegation is so vague or so obviously lacking a fundamental element of the alleged tort that the activity cannot properly be labeled "tortious" for purposes of section 1605(a)(5). But we are not presented with such a case. The actions alleged by the Association would seem to be "tortious" and therefore fall within this exception. The Association seeks damages for "interference" with "private use and enjoyment" of land, J.A. at 19, allegedly caused by Peru's actions.

While the complaint is hardly a model of clarity, it does seem to us to constitute a sufficient invocation of the tort of nuisance. *See* W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 87 (5th ed. 1984).

However, the Association can draw little comfort from its claims fitting conceptually within the law of tort; section 1605(a)(5) of FSIA goes on to establish two "exceptions to the exception," one of which the District Court rightly found applicable here. Specifically, subsection A of section 1605(a)(5) provides that the "tortious act" exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused."

■ In our view, Peru's actions constitute "discretionary functions" and thus fall outside the tortious act exception to FSIA immunity. It has repeatedly been recognized that, although cast in general terms, the "tortious act" exception was designed primarily to remove immunity for cases arising from traffic accidents. *See, e.g., Asociacion de Reclamantes,* 735 F.2d at 1525. This is scarcely to say that the exception applies *only* to traffic accidents, *cf. McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 588 (9th Cir.1983), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); rather, the point is that the legislative history counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law. *Cf. Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 645 (9th Cir.) ("a foreign state remains largely immunized from torts committed in its governmental capacity"), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). Accordingly, "acts or omissions of a fundamentally governmental nature" are discretionary functions for purposes of subsection A. *Id.* at 645.

Additional guidance on what acts should be deemed discretionary for FSIA purposes can be drawn from decisions construing the Federal Tort Claims Act (FTCA), 28 U.S.C.

§ 2680 (1982). The FTCA contains an analogous "discretionary function" provision, *compare id.* § 2680(a), *with id.* § 1605 (a)(5)(A), that served as a model for subsection A. *See* H.R.Rep. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Ad.News 6604, 6620. In its most recent treatment of the FTCA's discretionary function exception, the Supreme Court construed the provision as intending to preserve immunity for "decisions grounded in social, economic, and political policy." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). The Court also directed that it is "the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 813, 104 S.Ct. at 2765.

*Varig* involved a suit by representatives of victims of an airplane crash over an allegedly negligent certification by the Federal Aviation Administration of the ill-fated aircraft as safe. The Court held that the claim fell within the discretionary function exception because the aircraft certification program implemented a safety policy established pursuant to a legislative grant of discretion to the Secretary of Transportation. In addition, the Court concluded, the FAA's decisions to certify the *particular aircraft in question* were also protected

since these determinations involved "policy judgments" by FAA inspectors.

The *Varig* decision is instructive for our analysis. As this court recently had occasion to observe in a discretionary function case under the FTCA:

Some clear principles emerge from *Varig.* The discretionary function exception shields the government from liability for those decisions which involve a measure of policy judgment, and immunizes as well the execution of such decisions in specific instances by subordinates, even those at the operational level, if they must exercise such judgment too.

*Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1196 (D.C. Cir.1986).[3]

Applying these teachings to the case at hand, we are persuaded that Peru's actions are in fact discretionary.[4] It is beyond serious question that establishing a chancery in the District of Columbia to conduct foreign relations is a discretionary public policy decision and that this decision undergirds the specific acts which the Association bewails. The complaint challenges Peru's initial act of purchasing the MacArthur Boulevard building as well as its ensuing actions in modifying the building by, for example, installing a burglar alarm and bricking up certain openings. *See* Complaint ¶¶ 14, 16–18; J.A. at 9–10. In our view, the decision to purchase a particular building and employ specific security ar-

---

**3.** The issue in *Red Lake Band* concerned whether the federal official involved, an FBI agent, was acting *ultra vires.* The court concluded that he was so acting and that the "discretionary function" exception was thereby inapplicable because "[a] government official has no discretion to violate the binding laws, regulations, or policies that define the extent of his official powers." 800 F.2d at 1196. We are not presented with such a case. There is no indication in the record that the Peruvian officials responsible for the particular decisions about which the Association complains were acting *ultra vires.*

**4.** We need not be detained by the Association's contention that Peru's acts are criminal and thus cannot be discretionary, *see* Appellant's Brief at 12–13. While case law buttresses the proposition that a criminal act cannot be discre-

tionary, *see, e.g., Letelier v. Republic of Chile,* 488 F.Supp. 665 (D.D.C.1980), it has by no means been established that Peru has violated any criminal law. The District of Columbia never cited Peru for any criminal violation or, indeed, for any violation of the underlying zoning ordinance. Moreover, it is hardly clear that, even if a criminal act were shown, it would automatically prevent designation of Peru's acts as discretionary. The cases on which appellant relies involve criminal acts of a rather different character and order. *See, e.g., Letelier,* 488 F.Supp. at 673 (involving "assassination of an individual or individuals, action that is clearly contrary to the precepts of humanity as recognized in both national and international law"). We think it not unduly bold to conclude that violations, if any, of a zoning ordinance do not rise to the level of actions *malum in se.*

rangements are properly viewed as decisions made in the execution or implementation of a discretionary policy or activity, namely, establishing a chancery for the Naval Attache in the District of Columbia.

The Supreme Court has expressly recognized in the FTCA context that implementing decisions should be shielded from liability. *See Varig*, 467 U.S. at 820, 104 S.Ct. at 2768; *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953); *see also Red Lake Band*, 800 F.2d at 1195 ("[The] discretionary function exception protect[s] not only the initiation of discretionary activities but also the decisions made about how to implement those activities."). The fact that certain implementing actions may be insulated from FSIA liability, does not, of course, mean that *any* action implementing or executing a discretionary policy will be shielded from liability. As we recently recognized in the FTCA context, to fit within the discretionary function exception implementing acts must themselves involve the exercise of policy judgment. *See Red Lake Band*, 800 F.2d at 1196 (decisionmakers involved in implementation are immune "if they must exercise such [policy] judgment too"). In some instances, this may be a determination fraught with difficulty. Here, however, the actions complained of—buying the MacArthur Boulevard building, bricking up certain openings, and installing a burglar alarm, among other things—clearly "involve a measure of policy judgment." *Id.* Choosing the MacArthur Boulevard building over another—as well as choosing particular security arrangements—obviously rests on either "social, economic, [or] political policy." *Varig*, 467 U.S. at 814, 104 S.Ct. at 2765. That decision, it seems to us, (1) is grounded in an economic judg-

ment regarding which property represents the best value; or (2) embodies a political decision regarding the image that the Peruvian Government seeks to project through the offices it occupies; or (3) reflects security considerations that one might presume to be of interest in the present day; or (4) represents some combination of the foregoing considerations. In any case, it is beyond cavil that this choice involves not just some "measure" of policy judgment, but is at bottom a matter of precisely such a judgment. Focusing on the "nature and quality of the discretion involved in the act[s] complained of," *Gray v. Bell*, 712 F.2d 490, 513 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), we conclude that these acts should be viewed for FSIA purposes as governmental acts of a policy nature. *Cf. Olsen by Sheldon*, 729 F.2d at 645–48. Accordingly, they are insulated from liability under the "discretionary function" exception.[5]

### III

Our review convinces us that the District Court's decision was correct. Peru is entitled to the mantle of sovereign immunity preserved by FSIA. Each of the immunity exceptions urged by the Association is, upon analysis, inapplicable. The decision of the District Court is therefore unassailable.

\*    \*    \*    \*    \*    \*

■ We are obliged to address one final matter. The real estate defendants (hereinafter "Shannon & Luchs"), *see supra* note 1, filed a brief in this case styled, "Brief of Appellees Shannon & Luchs and Laura Astiz." This filing was wholly inappropriate. Whatever the merits of the As-

---

5. Moreover, we note that even were Peru's actions to fall outside the ambit of "discretionary functions," thereby removing Peru's immunity under FSIA and conferring federal court jurisdiction, another potentially dispositive obstacle looms in appellant's path. Specifically, it is uncertain that the Association has pleaded the requisite "special damages." *See B & W Management, Inc. v. Tasea Investment Co.*, 451 A.2d 879, 881–82 (D.C.Ct.App.1982) (action to

enforce zoning regulations one for public nuisance, requiring special damages). Accordingly, even if jurisdiction existed under FSIA, the District Court's only proper exercise of that jurisdiction may well have been to grant a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Peru's Appendix at 23–27, 45–47 (filings of both parties arguing special damages issue under rubric of 12(b)(6)).

sociation's claims against Shannon & Luchs, the hard fact remains that Shannon & Luchs had succeeded below; the District Court had completely dismissed the Association's claims against it. Nor was any appeal taken by the Association from that dismissal. There was thus no foundation in law or fact for Shannon & Luchs to participate as a party in the present appeal. Moreover, Shannon & Luchs devoted its improperly filed "Appellees" brief in its entirety to seeking sanctions against the Association for pursuing what Shannon & Luchs earnestly believes to be frivolous litigation. Specifically, Shannon & Luchs sought an award of the "attorneys' fees associated with *this* appeal and double costs." Shannon & Luchs Brief at 14 (emphasis added). Thus, Shannon & Luchs seeks to recover its costs for preparing a brief it had no legal basis or practical reason to file, the sole content of which is an argument that Shannon & Luchs should be paid for filing the brief.[6]

For these reasons, we are issuing orders this day striking the ersatz "Appellees" brief submitted by Shannon & Luchs and directing its counsel to show cause why sanctions should not be imposed pursuant to our inherent power, *see Bond v. Stanton,* 528 F.2d 688, 689–90 (7th Cir.), *remanded on other grounds,* 429 U.S. 973, 97 S.Ct. 479, 50 L.Ed.2d 581 (1976); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975), and Federal Rule of Appellate Procedure 38, and why disciplinary action, which could include a fine, *see, e.g., United States v. Bush,* 797 F.2d 536, 538 (7th Cir.1986), should not be taken pursuant to Federal Rule of Appellate Procedure 46(c).

*Judgment accordingly.*

6. Shannon & Luchs' motivation for appearing in this court is apparently its concern that we might decide to reverse the District Court's dismissal of the Association's claims against Peru. Had we held that jurisdiction over Peru existed under FSIA, the Association's claims against Shannon & Luchs may have been reactivated since the District Court dismissed out Shannon & Luchs only by declining to exercise pendent

jurisdiction. But while we understand Shannon & Luchs' motivation, we cannot excuse its conduct. The proper course would have been to move in the District Court for sanctions and then, had relief not been granted, to have filed a cross-appeal. Having chosen to do neither, Shannon & Luchs cannot impose itself upon this court, save, obviously, as *amicus curiae.*