**David PULASKI, et al., Plaintiffs,**

v.

**REPUBLIC OF INDIA, Defendant.**

**Civil Action No. H–01–3641.**

United States District Court,
S.D. Texas.

June 26, 2002.

Donald H. Cahilly, II, Bellaire, TX, for Plaintiff.

Ronald J. Kormanik, Houston, TX, for Defendant.

Opinion on Immunity

HUGHES, District Judge.

1. *Introduction.*

A landowner says that his neighbor is diverting water onto his property. Because the neighbor is a country's consular residence, the initial issue is whether the foreign government may be sued for this class of injury. The country's actions are not directly related to the consulate's discretionary diplomatic function, so this court has jurisdiction over the subject and party.

2. *Background.*

In 1995 the Republic of India established a consulate in Houston, Texas. It bought land with a house to use as the residence of the consul general. Two years later, David and Bettina Pulaski bought a lot that abuts the rear property line of the consular residence.

Sometime after acquiring the land, the Pulaskis noticed erosion on the south bank of a ravine that crosses the back—south—third of their lot. They traced the little ravine southeast to the boundary with India. There they discovered that surface water was being diverted from India's property through an eight-inch drain pipe that extended from India's brick fence about ten to twenty feet onto their land. Their inspection revealed three other pipes. In early 1999, the Pulaskis told India about the problem, and India declined to remove the pipes or change the flow. From the survey, only one of the pipes appears to have led to active erosion.

Based on this simple transaction, the Pulaskis sued in state court. They pleaded several legal theories including (a) trespass by the encroachment of the drain pipes, (b) nuisance through substantial interference with their use of the land, (c) negligence by India's breach of its duty not to divert water injuriously, and (d) violation of Texas water law by the diversion. India removed the case under this court's foreign state jurisdiction and moved to dismiss, claiming that as a foreign nation it is immune under federal law.

3. *Law.*

Federal law allows a foreign nation immunity from suit in the courts of the United States unless the case arises from, among others, these sources:

- Rights in real property in the United States; and

- Property damage in the United States that was caused by a tortious act of a foreign state.

Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(4)-(5).

Under the "tort" exception, immunity is still allowed for claims involving (a) discretionary functions of foreign officials and (b) interference with contracts, among others. *Id.* § 1605(a)(5)(A)-(B).

### 4. *Property Rights.*

■ India asserts that the claims do not involve rights "in" real property. In the sense that India does not directly claim title to the Pulaskis' property that is true; however, in Texas the form of action for a title dispute is called a "trespass to try title." This is derived from one defense to a trespass being title in the defendant. This analysis is not peculiar to Texas; a trespass is an unwarranted presence, and the question of warrant depends on title, license, or other concept of property law. The same holds true in India. *See* 29(1) *Halsbury's Laws of India* § 285.539 (David Hay, et al., eds., 2001).

India did two things. First, it trespassed. The four pipes crossed ten to twenty feet of the Pulaskis' land; that is an old-fashioned trespass—an encroachment. William B. Stoebuck & Dale A. Whitman, *The Law of Property* 411 (3d ed. 2000); *see also Dallas Land & Loan Co. v. Garrett*, 276 S.W. 471, 473–74 (Tex.Civ. App.-Dallas 1925 no writ) (encroachment and nuisance).

Second, it created a nuisance. It used its property so that the natural runoff was diverted into the pipes; that was an indirect trespass—commonly known as a nuisance. These two legal theories are traditional Anglo–American law, although Texas long ago codified the law of nuisance as it applied to the diversion of surface water. *See* 3 James Kent, *Commentaries* *440; Tex. Water Code

§ 11.086; *Shuttles v. Butcher*, 1 S.W.2d 661, 665 (Tex.Civ.App.-El Paso 1927 writ refused); 54 Tex. Jur.3d, Nuisances § 2 (1987) ("a continuing encroachment on the land of an adjoining owner without any right to do so is both a trespass and a nuisance"); *Prosser and Keeton on The Law of Torts* 622 (5th ed.1984).

### 5. *Action.*

■ India says that the exception for damage to property does not apply because—since it did not construct the wall and pipes—it neither acted nor omitted to act tortiously. India's act of diverting water onto the Pulaskis' property is tortious in America and India. It is not the original act of constructing the wall and pipes that is the "fault" in India; it is the current use of its property to injure its neighbor and its warrantless use of its neighbor's land. *See Abdul Gani v. Sadu Ram*, I.L.R. 28 (Raj.) 42 (1978) (new owner's use of spout in house to discharge dirty water on joint easement is trespass). Even if it were conceived of as an omission to remove the blockage and channels, it is still a tort.

Whether India built the wall that blocked the natural drainage and the pipes that channeled it forcefully onto the neighbor's land is irrelevant to the objective fact that it is using its property in a way that unreasonably damages its neighbor. The wall and pipes are fixtures of India's land, and it is responsible for their effect. *See Martin v. Martin*, 246 S.W.2d 718 (Tex. Civ.App.-Fort Worth 1952 no writ); *Feeley v. E.R. Butterworth & Sons*, 42 Wash.2d 837, 259 P.2d 393, 396 (1953). If a predecessor in title has built a barn ten feet into the neighbor's land, the current owner of the land is responsible for damages for the trespass at least to its inception of title and for removal or other cure.

### 6. *Discretion.*

■ India next insists that the decision not to correct the drainage implicates its governmental discretion, removing it from the scope of the exceptions. 28 U.S.C. § 1605(a)(5)(A). Every act by every agent of a government could involve some discretion; grass could be mowed east to west or in a spiral. The law allows foreign governments immunity for policy choices. When, however, the execution of those choices damages land, the governments are obliged to compensate. It is misguided to exempt even indirect injuries resulting from a nation's violations of land use restrictions to the detriment of its neighbors. *But see MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918 (D.C.Cir. 1987).

India's position reduces the distinction between discretionary acts and operating acts to the tautology that, if a nation does it, it is discretionary. The American consideration for the legitimate functions of foreign nations is clear from the statute's allowing broad immunity where none is required. The exceptions are for domestic friction like this case.

Counter-factually, India claims that the choice to flood the property of its neighbor instead of its own was necessary to its governmental function because water on its own land would make it "unsuitable for use as a residence by the consul general or for entertaining guests of the Consulate." Motion to Dismiss at 8. If India buys swamp for its consular residence, it cannot appropriate its neighbor's land for fill. "Necessity" is the argument of tyrants rather than the rule of law. *See* Pitt, William, The Younger, Speech to the House of Commons on the India Bill, (Nov. 18, 1783), *in The Oxford Dictionary of Quotations* 374, ¶ 3 at 374 (3d ed. 1979).

India suggests that, since diplomatic car wrecks were a prime motivation for the tort exception, it should be limited to them. Motion to Dismiss at 5. Legally and physically, trespass on a neighbor's land is more analogous to a car wreck than it is to the cases of reasons-of-state injuries.

### 7. *Limitations.*

■ A right of action for damages based on nuisance is limited to two years. Tex. Civ. Prac. & Rem. Code § 16.003. If the nuisance is permanent, the bar precludes an action beyond the two years of the first actionable injury. If the nuisance is temporary or recurring, the law bars only claims for events having occurred more than two years before the lawsuit.

Although rain is a persistent condition in Houston, the nuisance suffered by the Pulaskis is temporary because it is contingent on sporadic rain. The injury is also considered temporary because it can be terminated. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). The Pulaskis' action, therefore, may be maintained for injuries during the two years before the suit, leaving to them the difficulty of establishing how much of the erosion was in the last two years as well as how much of it was still natural despite the diversion.

As a consequence for its trespass, India could be responsible for (a) the lost use or diminution in value within two years of the suit, and (b) removal of the encroachments—as long as no measure duplicates an award for the nuisance. The Pulaskis will be able to elect their remedy.

### 8. *Conclusion.*

When India was made aware that pipes from its property were a damaging encroachment to the Pulaskis' property, it was responsible for correcting it. India's status as a foreign nation does not exempt it from its obligations as a land owner. No part of this sorry unneighborliness is essential to India's discretion to make diplo-

matic and other policy choices in the interests of its people.

For this decision, the court has had to assume that the facts as pleaded reasonably correspond to reality. While the existence of the pipes cannot be disputed, the facts of causation and extent will have to be established as this case progresses.