**Khalil Nicholas MAALOUF, Plaintiff,**

v.

**THE SWISS CONFEDERATION, Defendant.**

**No. CIV.A. 00–2430(ESH).**

United States District Court,
District of Columbia.

July 3, 2002.

32

34

Thomas Fortune Fay, Washington, DC, for plaintiff.

Deborah Brand Baum, Washington, DC, Stephan E. Becker, Shaw Pittman, Washington, DC, for defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is the motion to dismiss or for summary judgment of defendant Swiss Confederation. Defendant argues for dismissal on the ground that the Court lacks jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, and for summary judgment on the ground that even if jurisdiction exists, Switzerland is not liable because it did not breach a duty to plaintiff, or because plaintiff was contributorily negligent. Upon consideration of the pleadings and the record, the Court will deny defendant's motion.

### BACKGROUND

Plaintiff Khalil Nicholas Maalouf is a 22–year–old citizen of the United States. Defendant Swiss Confederation is a foreign state under the provisions of the FSIA.

On February 13, 1992, plaintiff entered the grounds of the Swiss Embassy in the District of Columbia with a friend to go sledding on the Embassy's hills. (Complaint ¶ 2.) At the time, plaintiff was 12 years old. Area residents were allowed to sled on Embassy property (Answer ¶ 2), and plaintiff entered through an open gate. (Pl.Ex. 1, Deposition of Khalil Maalouf ("Maalouf Dep.") at 84:6–7.) Several other

children were sledding and playing on the Embassy's grounds at the time. (Maalouf Dep. at 157:13–22, 158:1–3). Plaintiff first went sledding down the right side of the slope (Maalouf Dep. at 111:17–20), using a flat plastic sled without a steering device (Pl.Ex. 2, Deposition of David Martin at 10:16–23), and then decided to sled down the left side. As plaintiff was sledding down the left side of the slope, in the direction of a snow ramp (Maalouf Dep. at 141:4–7), his leg struck a guide wire attached from a tree to the ground, and he suffered severe injuries. The tree was less than 30 feet from the left of the snow ramp (Maalouf Dep. at 132:19–20), and the guide wire was attached to the tree two or three meters above the ground (Affidavit of Lincoln Diaz ("Diaz Aff.") ¶ 4), secured to the ground by a metal pipe approximately eight feet uphill from the tree. (Maalouf Dep. at 135:9–11.) Plaintiff claims that he was unaware of the wire before the accident occurred. (Maalouf Dep. at 155:5–9.) The wire was light gray (Maalouf Dep. at 137:7–13), and had been attached in 1988 or 1989 by an Embassy maintenance worker, after the Swiss Ambassador expressed concern that the tree, which leaned downhill, would fall. (Diaz Aff. ¶ 2.) Defendant claims that at the time that the maintenance worker installed the wire, he attached a brightly-colored ribbon to it (Diaz Aff. ¶ 4), but plaintiff alleges that no ribbon was visible when the accident occurred. (Maalouf. Dep. at 136:3–9.) Prior to plaintiff's sledding accident, no accidents involving the wire had been recorded. (Diaz.Aff.¶ 8.) Plaintiff now seeks damages based on defendant's negligence, both in maintaining the wire and in failing to warn of its existence.

## LEGAL ANALYSIS

### I. Immunity Under the FSIA

▪ Defendant has moved to dismiss plaintiff's claim on the ground that it is immune under the FSIA. That statute grants immunity from the jurisdiction of federal and state courts in the United States to foreign sovereigns, subject to several exceptions. *See* 28 U.S.C. §§ 1602–1611. Specifically, 28 U.S.C. § 1605 waives jurisdictional immunity for claims of money damages for personal injury or death, unless, *inter alia,* the case "is based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused ...." The burden of proof is on the defendant to demonstrate by a preponderance of the evidence that the discretionary exception applies. *See, e.g., Faber v. U.S,* 56 F.3d 1122, 1124 (9th Cir.1995). A similar discretionary function clause in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680, served as a model for the FSIA clause, and interpretations under FTCA are therefore applicable to the FSIA. *See, e.g., MacArthur Area Citizens Ass'n v. Republic of Peru,* 809 F.2d 918, 921–22 (D.C.Cir.1987).

▪ The Supreme Court has established a two-step process for identifying a discretionary function under the FTCA. First, a court must determine whether there was a specific regulation mandating action in the case, leaving the government actor with no discretion as to how to proceed. *See, e.g., Cope v. Scott,* 45 F.3d 445, 448 (D.C.Cir.1995); *Berkovitz by Berkovitz v. U.S,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). If such a regulation exists, the government action is not discretionary, and immunity therefore does not attach. If there is no such regulation, however, immunity exists only if the "discretionary acts of a government employee 'are of the nature and quality that Congress intended to shield from tort lia-

bility,'" *Cope*, 45 F.3d at 448 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)), and if the granting of immunity would be consistent with Congress's intention "to prevent 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig*, 467 U.S. at 798, 104 S.Ct. 2755. The analysis should focus on whether "decisions based on considerations of· public policy" are involved, *Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954, because "[o]nly discretionary actions of greater significance" should have immunity. *Cope*, 45 F.3d at 448. *See United States v. Gaubert*, 499 U.S. 315, 325 n. 7, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (noting that a negligent government driver would not fit the discretionary exception regardless of the fact that he had a choice about how to drive).

It is undisputed that in the instant case, neither the decision to protect the leaning tree nor the decision not to warn sledding children of the potential danger was controlled by regulation. Both decisions were therefore discretionary under the first prong of the test. Defendant argues that these decisions were also discretionary under the second prong, because they were of the type Congress intended to protect under the FSIA, involving financial considerations and policy decisions about the nature and character of the Embassy grounds. Plaintiff disagrees, arguing that the installation of a guide wire and the failure to warn did·not implicate public policy considerations.

## A. Maintenance of the Guide Wire

▉▉▉ When it installed the wire to secure its tree, defendant was acting as a private landowner, and the discretionary exception does not extend to such decisions.[1] "In cases where the government is alleged to have committed negligence in the performance of a function such as that performed by a private citizen, rather than in the fulfillment of a broad policy-making duty, the government is subject to suit." *Faber*, 56 F.3d at 1124 (no immunity applied because Forest Service decisions to improve diver safety did not involve broad policy considerations). *See Gonzalez v. U.S.*, 690 F.Supp. 251, 255 (S.D.N.Y.1988) (no immunity applied when a stanchion fell on plaintiff in a post office, because the relevant decision did not arise from the agency's "statutory mission"); *Andrulonis v. U.S.*, 593 F.Supp. 1336, 1338 (N.D.N.Y. 1984) (no immunity applied to a government scientist's conduct because his decisions involved "the exercise of professional and scientific judgment rather than policymaking"). Contrary to defendant's contention (Def. Mem. at 10), the fact that the Embassy's property is not maintained for public use supports the result reached here, because the decision regarding protection of the tree was clearly related to defendant's role as a landowner, and not a result of any policy-making duties of a governmental body.[2] Because the Swiss

---

1. ·Although defendant may have balanced minor financial and aesthetic concerns in making the decision to install the wire, these issues were relevant to the Swiss Federation only as a landowner, not as a governmental body. ·The decision to attach a wire to support a tree behind the Swiss Embassy did not involve any of the "considerations of public policy," *Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954, that the FSIA is meant to shield from liability.

2. The cases relied on by defendant are therefore inapposite, as they involved land maintained for public use. In *Bowman v. U.S.*, 820 F.2d 1393 (4th Cir.1987), the court found that the National Park Service's decision not to install a guard rail on Blue Ridge Parkway was discretionary, because it involved consideration of the park's goals and policies and the balancing of factors including "safety, aesthetics,·environmental impact and available financial resources." *Id.* at 1395. In

government was acting in a private capacity in installing the guide wire, holding it liable would not lead to " 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy," as Congress feared. *Varig,* 467 U.S. at 798, 104 S.Ct. 2755.

Defendant also cites *MacArthur,* in which a neighborhood association brought an action against the Republic of Peru for negligence in the construction of a chancery in the District of Columbia. 809 F.2d 918. There, this Circuit held that "[i]t is beyond serious question that establishing a chancery in the District of Columbia to conduct foreign relations is a discretionary public policy decision and that this decision undergirds the specific acts which the Association bewails." *Id.* at 922. The attachment of a retaining wire to a tree on Embassy property is not comparable, however, to the construction of a new government building; the former is the type of minor grounds maintenance that a private landowner would undertake, while the latter implicates much broader considerations of budgetary constraints, security concerns, and political concerns regarding the

image the foreign government wishes to project. *See MacArthur,* 809 F.2d at 923.

## B. Failure to Warn

The discretionary exception does not generally apply to a failure to warn in this case. "It is clear that the question of what constitutes adequate warning is not typically related to broad public policy ... [a] failure to warn involves considerations of safety, not public policy." *Faber,* 56 F.3d at 1125. Courts therefore have found that an underlying decision to create a dangerous condition was discretionary even where the decision not to warn the public of the danger was not discretionary. *See, e.g., Cope,* 45 F.3d at 450–52 (holding that the decision not to provide increased skid resistance on a park road was discretionary, but that the failure to post warning signs was not; since the park was not maintained for aesthetic purposes, the decision not to post warning signs involved no significant public policy considerations);[3] *W.C. & A.N. Miller Companies v. United States,* 963 F.Supp. 1231 (D.D.C. 1997) (holding that while decisions regarding the disposal of munitions were discretionary, the decision not to warn the public

*Rosebush v. U.S.,* 119 F.3d 438 (6th Cir.1997), the Sixth Circuit held that the United States Forest Service had discretion in determining whether to secure a firepit at a campground in a national forest, because policy questions concerning aesthetics, the environment, and safety were involved. *See also Wysinger v. United States,* 784 F.2d 1252 (5th Cir.1986) (holding that immunity applies to Forest Service decision not to have lifeguard at swim site); *Naidu v. United States,* 93 F.Supp.2d 577 (D.N.J.2000) (holding that immunity applies to National Park Service decision not to alter a staircase in a historic fort). Unlike a public park or campground, the Swiss Embassy grounds are not maintained primarily for the purpose of public enjoyment and recreation; the grounds are almost exclusively for use as a private residence, and even if it could be assumed that the Ambassador considered the safety of sledders and aesthetics of

the Embassy grounds when deciding to secure the tree, such a consideration was no different from that of a private landowner who chooses to allow children to sled on his property. In short, the Ambassador's decision was unrelated to the purposes or day-to-day functions of the Embassy or of the Swiss government.

**3.** *Cope* distinguished *Bowman,* 820 F.2d 1393, a failure to warn case cited by the defendant (Def. Mem. at 9–10, 16), finding that the decision not to warn visitors in *Bowman* was discretionary because it involved a "reasonable desire to protect the experience of the park visitor," and therefore implicated important public policy considerations. *Cope,* 45 F.3d at 452. Since the Swiss Embassy grounds are not maintained for public use, the failure to warn in this case is similarly distinguishable from *Bowman.*

about the buried munitions was not discretionary).

■ Thus, the applicability of the discretionary function exception to a failure to warn "must be limited to those unusual situations where the government was required to engage in broad, policy-making activities or to consider unique social, economic, and political circumstances in the course of making judgments related to safety." *Faber*, 56 F.3d at 1125. *Compare Wells v. United States*, 851 F.2d 1471 (D.C.Cir.1988) (holding that EPA's decision not to warn residents about lead pollution was discretionary because it involved important policy considerations affecting the "feasibility and practicality of the Government's regulatory program" (quoting *Cisco v. United States*, 768 F.2d 788, 789 (7th Cir.1985))) with *Boyd v. United States*, 881 F.2d 895, 898 (10th Cir.1989) (holding that the government's decision not to warn swimmers about potential dangers was not discretionary, since it did "not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned").

■ In the instant case, defendant can point to no important political, social, or economic considerations involved in its decision not to warn plaintiff about the guide wire. Just as defendant's decision to maintain the guide wire was private in nature, so, too, was defendant's decision not to warn plaintiff.

Accordingly, the Court finds subject matter and personal jurisdiction in this case, and defendant's motion to dismiss under the FSIA will therefore be denied.

## II. Motion for Summary Judgment

Alternatively, defendant has moved for summary judgment on the ground that, as a matter of law, Switzerland did not breach its duty to plaintiff, and that in any case, plaintiff was contributorily negligent

or assumed the risk of his actions. Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### A. Breach of Duty of Care

■ Plaintiff alleges that defendant was negligent in failing to warn plaintiff of the wire and in allowing plaintiff to sled in a dangerous area. Under District of Columbia law, "a person is liable to another only if '(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff.'" *Thomas v. City Lights School,*

*Inc.*, 124 F.Supp.2d 707, 709 (D.D.C.2000) (quoting *Brown v. Consolidated Rail Corp.*, 717 A.2d 309, 311–12 (D.C.1998)). The issue in this case is whether defendant breached a duty of care to plaintiff; that analysis begins by determining the standard of care owed by the defendant.

The duty owed by a property owner to an individual on his land depends on the status of that individual. At common law, an individual on the property of another fell into one of three categories: invitee, licensee, or trespasser. An invitee was on the land to carry on a transaction for the benefit of the landowner or for the benefit of both parties, *see, e.g.*, *Firfer v. United States*, 208 F.2d 524, 527 (D.C.Cir.1953), and could hold the landowner to a duty of providing "reasonably safe premises." *Arthur v. Standard Engineering Co.*, 193 F.2d 903, 905 (D.C.Cir.1951). A licensee, lawfully on the land but not for the benefit of the owner, could hold the landowner to various standards of care depending on the particular circumstances.[4] *Firfer*, 208 F.2d at 527. Finally, trespassers, who were not lawfully on the land, could recover only for "intentional, wanton, or willful injury or the maintenance of a hidden engine of destruction." *Id.* at 528 (citation omitted).

■ Under current District of Columbia law, however, the traditional distinction between a licensee and an invitee has been abolished; a landowner must take "reasonable care under the circumstances" with respect to all "persons *lawfully* upon the landowner's or land occupier's property." *Sandoe v. Lefta Associates*, 559 A.2d 732, 738 (D.C.

1988) (emphasis added). The common law standard for a trespasser remains—a trespasser may recover from a landowner only for injuries that are "willful, wanton, or that resulted from maintenance of a hidden engine of destruction." *Id.* at 739 n. 6 (quoting *Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 601 (D.C.1981)). In its answer, defendant admits that plaintiff "had been given permission to enter the grounds to sled" (Answer ¶ 2), and in its reply, defendant appears to assume that plaintiff was not a trespasser. (Def. Reply at 11.) However, as demonstrated below, whatever status plaintiff had, it cannot be concluded as a matter of law that defendant did not breach its duty of care.

### 1. Licensee/Invitee

■ Defendant argues that, even assuming that plaintiff did not see the wire, it was in plain view and anyone sledding down the hill would see it, and therefore it was reasonable for defendant not to warn of the wire's existence. Based on the record, however, the Court cannot find that defendant's actions were reasonable as a matter of law. Plaintiff claims that the wire was grey, and that the stake was greyish-white and obscured by snow. (Maalouf Dep. at 137:7–13, 139:10–20). A finder of fact could reasonably determine that plaintiff, from the top of the hill and while sledding down the hill, could not reasonably have seen the wire, and that defendant should have been aware of the risk. Such a finding could lead to a determination that defendant did not exercise reasonable care, since it failed to warn

---

4. Some courts drew a distinction between two classes of licensees—"licensees by invitation," who were "invited upon the land … either by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner … had given his consent to the entry," and "bare licensees," who were on the land "by mere sufferance or acquiescence." *Firfer*, 208 F.2d at 528. While a "licensee by invitation" could expect "reasonable and ordinary care to provide reasonably safe premises," a bare licensee could expect protection only from "wanton injury" and "hidden peril[s]" or "hidden engine[s] of destruction." *Id.* at 527–8 (citations omitted).

plaintiff of the danger or to fence off the area around the wire. *See, e.g., Youssef v. 3636 Corp.,* 777 A.2d 787, 795 (D.C.2001) (holding that questions for the jury remained as to whether landlord should have known that sidewalk was dangerously slippery, and as to whether landlord exercised reasonable care in eliminating the danger).

The cases defendant cites in response are unpersuasive, because they all involve a dangerous condition that should have been obvious to the plaintiff. In *Biggs v. Brannon Square Associates,* 174 Ga.App. 13, 329 S.E.2d 239 (1985), the court found that no duty was violated when the plaintiff drove his bike down a dirt path and crashed into a moving automobile. The court in *Biggs* emphasized that the plaintiff understood the "possibility of encountering vehicular traffic anywhere in an area specifically designed and designated for automobiles." [5] *Id.* at 243. In *Skelton v. Twin County Rural Electric Association,* 611 So.2d 931 (Miss.1992), in which a child fell on a metal pipe, the court explicitly stated that "no hidden danger existed. The metal pipe stood in open view." [6] *Id.* at 938. In *Schaffer v. Spirit Mountain Recreation Area Authority,* 541 N.W.2d 357 (Minn.Ct.App.1995), in which a skiing child ran into a barrel, the court found that "[t]here is no evidence to support a conclusion that the barrel was a hidden hazard." *Id.* at 360. In *Lee v. State, Dept. of Natural Resources,* 478 N.W.2d 237 (Minn.Ct. App.1991), the court held that the lake into which the plaintiff child fell was an "obvious danger" that any child should have understood. *Id.* at 239. Here, in contrast, plaintiff has offered evidence indicating that the hazard was hidden, and the issue of whether the defendant exercised "reasonable care under the circumstances" is therefore a question of fact properly left for trial.

### 2. Trespasser

■■■■ Even assuming *arguendo* that plaintiff was a trespasser, a genuine issue of material fact would still exist as to whether defendant breached a duty of care. A trespasser may recover from a landowner only for injuries that are "willful, wanton, or that resulted from maintenance of a hidden engine of destruction." *Sandoe,* 559 A.2d at 739 n. 6 (quoting *Holland,* 431 A.2d at 601). As the record stands, the Court cannot find that the defendant has met this burden as a matter of law. Based on a finding that plaintiff did not see the wire from the top of the hill, and that defendant was aware that children were sledding on its land, a finder of fact could reasonably determine that defendant's failure to warn plaintiff of the wire, or to take any other precautions, was "wanton," or was tantamount to maintaining a "hidden engine of destruction." [7] *Id.*

---

5. Additionally, the *Biggs* court considered an arguably more restrictive test than the "reasonable care under the circumstances" standard applicable here. In *Biggs,* the court determined whether the defendant "wantonly or wilfully injure[d]" the plaintiff, and whether "ordinary care" was used. *Biggs,* 329 S.E.2d at 241.

6. Here again, defendant cites a case on licensee law from a different jurisdiction without acknowledging that the standard of care due a licensee in that jurisdiction differs from the standard in the District of Columbia. The court in *Skelton* used the more restrictive "willfully or wantonly injuring" standard for licensees, *id.* at 936, rather than the "reasonable care under the circumstances" test which governs here.

7. Defendant claims that one of its employees spoke to plaintiff and his friends on the Embassy grounds on the day in question, and told them that they would be sledding at their own risk. (Def. Ex. F, Deposition of Daniel Zuercher at 3:14–23.) Even if that were true, however, the employee failed to warn plaintiff of the wire when presented with the opportunity to do so.

Additionally, the sledding hill could fall under the "attractive nuisance" doctrine, which relates to the standard of care owed to trespassing children. This doctrine is set forth in the Restatement (Second) of Torts § 339, and it has been adopted in this jurisdiction. *See Holland,* 431 A.2d 597. According to the Restatement, a landowner is liable for physical harm to a child trespasser from a condition on his land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339. Defendant admits that it knew that children were sledding on Embassy property, and as noted, a finder of fact could reasonably determine that defendant should have known of the risk posed by the wire to the children. Moreover, whether plaintiff knew of the wire's existence before he began to sled is disputed, as is whether he should have realized the risk involved assuming that he was aware of it. Finally, weighing the utility of the wire and the burden of eliminating it against the risks it posed, in order to determine whether defendant exercised reasonable care, is a job for the finder of fact.

In response, defendant argues that the attractive nuisance doctrine does not apply because it covers only artificial, rather than natural, elements of the land. However, defendant blurs the distinction between the attractive condition that lures the child and the nuisance that threatens him, and the examples it cites of natural elements not found to be nuisances—such as a beach at high tide, rolling land, shrubs and trees, and an unguarded stream—all differ from the instant case because here, the nuisance itself is an artificial one placed on the hill by the defendant. Although plaintiff was attracted to defendant's land by a natural source (i.e., the hill), the nuisance—namely, the metal wire—was artificial. Under the attractive nuisance doctrine, the relevant element is not what attracts the child, but rather the nuisance itself. *See* Restatement (Second) of Torts § 339, ill. 3 (stating that a landowner is liable when a child picking blossoms in a magnolia tree comes in contact with a wire that the child did not observe); *Pippin v. Atallah,* 245 Mich.App. 136, 626 N.W.2d 911, 916 n. 3 (2001) ("The term 'attractive nuisance' is a misnomer ... because it is not necessary, in order to maintain such an action, that the hazardous condition be the reason that the children came onto the property.") [8]

Because genuine issues of material fact remain as to whether defendant breached

---

**8.** Nor does defendant's argument that plaintiff should have appreciated the risks of his behavior trump the existence of an attractive nuisance. Rather, that question is specifically part of the test for an attractive nuisance articulated in the Restatement. *See* Restatement (Second) of Torts § 339(c).

its duty to plaintiff, defendant's motion for summary judgment on this basis is denied.

### B. Defenses

■ Defendant has also moved for summary judgment based on the affirmative defenses that plaintiff was contributorily negligence and assumed the risk of his conduct. The burden of proving contributory negligence is on the defendant, and the existence of contributory negligence is normally a question of fact for trial. *See, e.g., Lynn v. District of Columbia,* 734 A.2d 168, 172 (D.C.1999). Summary judgment should only rarely be granted on the basis of contributory negligence. *See Paraskevaides v. Four Seasons Washington,* 292 F.3d 886, 891–92 (D.C.Cir.2002) (" 'Unless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion, the questions are factual and not legal.' ") (quoting *Shu v. Basinger,* 57 A.2d 295, 295–96 (D.C. 1948)); *Tilghman v. Johnson,* 513 A.2d 1350, 1351 (D.C.1986) ("Only in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law.")

■ Assumption of risk is often used interchangeably with contributory negligence. *See Sinai v. Polinger Co.,* 498 A.2d 520, 524 (D.C.1985). The standard is heavily fact-based, and summary judgment based on assumption of risk should therefore be granted only if no real dispute exists as to the plaintiff's awareness of the relevant danger. "Assumption of risk is applied only where 'the plaintiff ... subjectively know[s] of the existence of the risk and appreciate[s] its unreasonable character.' " *Jarrett v. Woodward Bros.,*

*Inc.,* 751 A.2d 972, 986 (D.C.2000) (quoting *Sinai,* 498 A.2d at 524).

### 1. Contributory Negligence

■ Defendant argues that plaintiff was contributorily negligent because he was racing his friends down the hill; his sled was difficult to control; he sled directly towards the tree; and he did not inspect the area before sledding down. Contributory negligence is "conduct 'which falls below the standard to which a plaintiff should conform for his [or her] own protection' and contributes to the plaintiff's injury." *Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C.1980) (quoting Restatement (Second) of Torts § 463). "The defendant claiming contributory negligence has essentially the same burden as the plaintiff in proving negligence, with the difference that the standard of care for contributory negligence is the degree of care a reasonable person would take for his or her *own* safety." *District of Columbia v. Brown,* 589 A.2d 384, 389 n. 1 (D.C.1991) (citing Restatement (Second) of Torts § 466, comment f (1965)).

Defendant has failed to meet this burden. The Court cannot require a twelve-year-old child, as a matter of law, to inspect a hill before sledding down it, and a finder of fact could determine that plaintiff's behavior was entirely reasonable for a child of his age. Thus, contributory negligence in this case is an issue to be determined by the finder of fact, and the defendant's motion for summary judgment on this basis will be denied.[9]

---

9. The cases cited by defendant in which summary judgment was granted for contributory ·negligence are inapposite. *See Foshee v. Consolidated Rail Corp.,* 849 F.2d 657 (D.C.Cir. 1988); *Alston v. Baltimore & Ohio R.R. Co.,* 433 F.Supp. 553 (D.D.C.1977). In these cases, children engaged knowingly in extremely dangerous activities such as jumping off or coming within several feet of a moving train, which are easily distinguished from sledding on a local hill, an ordinary childhood activity.

**2. Assumption of Risk** ·

 "Assumption of risk is an available defense when a plaintiff voluntarily has incurred a known risk." *Scoggins,* 419 A.2d at 1004 (citing Restatement (Second) of Torts § 496E, comment a. (1965)). To demonstrate assumption of risk, a defendant must prove:

(1) that there was available to the [plaintiff] an alternative to encountering the risk; (2) that the [plaintiff's] choice between the risk and such alternative was fully voluntary; (3) that such alternative afforded the [plaintiff] the safety mandated by statute, rule or regulation; and (4) that the [plaintiff's] determination to encounter the risk was, under the circumstances, made with willful, wanton, or reckless disregard for his own safety.

*Jarrett,* 751 A.2d at 986 (quoting *Martin v. George Hyman Const. Co.,* 395 A.2d 63 (D.C., 1978)). Assumption of risk is a subjective standard, *see Sinai,* 498 A.2d 520, and the plaintiff's age is therefore relevant. *See Morrison v. MacNamara,* 407 A.2d 555 (D.C.1979). A consideration of assumption of risk "requires an analysis of such complex factors as the plaintiff's age, intelligence, and experience ... [and] a plaintiff who through inexperience or immaturity fails to fully comprehend a risk may not be held to the same level of understanding as a plaintiff who has superior intelligence or experience." *Id.* at 567 (internal citations omitted).

 In the first instance, it is not clear whether the risk in this case is sledding towards the wire or the activity of sledding itself. As to the wire, plaintiff claims that he did not see it until after his injury occurred (Complaint ¶ 2), and if he had no knowledge of the wire before he began sledding, requirements (1), (2), and (4) above cannot be satisfied. If the risk is the activity of sledding itself, then plaintiff's actions do not constitute assumption of risk as a matter of law. As noted, the Court cannot find that a twelve-year-old child assumes the risk of foreseeable consequences simply by sledding on a neighbor's hill, even if the child fails to inspect the sledding area. Plaintiff's sledding does not constitute the type of "willful, wanton, or reckless disregard for his own safety" that the assumption of risk defense requires. *Jarrett,* 751 A.2d at 986 (quoting *Martin,* 395 A.2d at 63).

## CONCLUSION

For the foregoing reasons, the Swiss Confederation's motion to dismiss or for summary judgment is denied. A separate Order accompanies this Opinion.

## *ORDER*

Upon consideration of defendant's motion to dismiss or, in the alternative, for summary judgment, plaintiff's opposition, and the entire record contained therein, it is hereby

**ORDERED** that defendant's motion to dismiss [24-1] is **DENIED;** and it is

**FURTHER ORDERED** that defendant's motion for summary judgment [24-2] is **DENIED,** and it is

**FURTHER ORDERED** that this matter is set down for a status on July 22, 2002, at 9:45 a.m.

**SO ORDERED.**